(No. 20165.—

LILLIAN BOLLENBACH, Defendant in Error, *vs.* JACOB BLOOMENTHAL *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 11, 1930.*

E<small>DWARD</small> W. R<small>AWLINS</small>, for plaintiffs in error.

J<small>OSEPH</small> H. H<small>INSHAW</small>, and W<small>ILLIAM</small> A. H<small>ANSON</small>, (E<small>L-</small>
<small>MER</small> M. L<small>EESMAN</small>, of counsel,) for defendant in error.

Mr. J<small>USTICE</small> O<small>RR</small> delivered the opinion of the court:

Lillian Bollenbach, defendant in error, (hereinafter called plaintiff,) recovered a judgment for $8000 in the superior court of Cook county against Jacob Bloomenthal and Edgar R. Bennecke, co-partners doing business as Bloomenthal & Bennecke, plaintiffs in error, (hereinafter called defendants,) for damages based on the alleged negligence of defendants in extracting a tooth on October 30, 1925. The Appellate Court for the First District affirmed this judgment, and the case was brought here for review by a writ of *certiorari.*

The cause of action was tried on four counts of the declaration, which, with slight differences in language, charged generally that defendants carelessly, negligently and unskillfully handled and managed said tooth and the instruments used in its extraction so that a piece of metal

filling and tooth passed down the throat of plaintiff and lodged in her lung, causing her injury. The plea of defendants was not guilty.

Plaintiff was suffering from a severe toothache on October 30, 1925, and called upon Dr. Honoroff, a dentist, who examined the aching tooth and found it to be infected. It was a dead lower molar, with a large amalgam filling which embraced from one-third to one-half the crown. He advised the extraction of the tooth under a general anesthetic, not believing the condition of the tooth and patient favorable to an extraction under a local anesthetic. Since he did not administer gas in his office Dr. Honoroff directed plaintiff to defendants, giving her a card on which the tooth to be extracted was marked. Plaintiff then went to the dental offices of defendants, where she met Dr. Bloomenthal, and after some conversation it was agreed that the tooth should be extracted by him under a general anesthetic. The other defendant, Dr. Bennecke, was not present. A prop was placed in patient's mouth to keep it open and the anesthetic administered. According to defendants, a mouth-pack was then inserted in the back part of plaintiff's mouth to make the induction of the anesthetic quicker and to prevent particles of filling or tooth passing down the throat. During the extraction the crown of the tooth fractured into a number of pieces but the roots came out intact. Some pieces of tooth and filling were picked up by Dr. Bloomenthal, while others were rinsed out of patient's mouth into the dental spittoon upon her revival. Dr. Bloomenthal testified that when he saw the roots were out he attempted to assemble the rest of the tooth and filling, but they were so fractured and had scattered so much that there was no way of knowing whether there were any missing fragments. He also testified that during the extraction plaintiff was restless under the anesthetic, several times slumping down in the chair, and the mouth-pack became dislodged and had to be replaced. He further testified that he did not know

or suspect that any piece of tooth or filling had gone down plaintiff's throat, and it was almost a year before he heard anything about the matter. After coming out from under the anesthetic the first thing plaintiff remembered was someone brushing out her mouth, after which she rinsed it and spit several particles of tooth into the basin. After a fifteen minutes' rest she went home. She testified that it was hard for her to get her breath and she felt like a person who had phlegm in his throat. From that time on she suffered with a persistent cough and a condition resembling asthma. In November, 1925, an X-ray disclosed the presence of a small foreign body in her bronchial tube. On January 24, 1926, during a severe coughing spell, she coughed up a small piece of tooth and filling, both of which were introduced in evidence.

The case proceeded to trial on the theory that the facts were sufficient to invoke the doctrine of *res ipsa loquitur,* and in affirming the judgment the Appellate Court has sustained the application of that doctrine. Defendants seriously contend that the doctrine of *res ipsa loquitur* is not applicable in this case, and our decision will rest upon the determination of this one question.

The doctrine of *res ipsa loquitur* is, that whenever a thing which produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford *prima facie* evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. The presumption or inference of negligence raised by the application of this doctrine is not absolute or conclusive but is rebuttable, and vanishes entirely when any evidence appears to the contrary. As is said by this court in *Coal Creek Drainage District* v. *Sanitary District,* 336 Ill. 11: "A presumption is not evidence and cannot be treated

as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption vanishes entirely." Substantially this same language was used by this court in *Lohr* v. *Barkmann Cartage Co.* 335 Ill. 335, *Osborne* v. *Osborne,* 325 id. 229, and *People* v. *Tate,* 316 id. 52.

The essential facts in the present case, including the injury of the plaintiff, are not in dispute. An accident happened in the extraction of a tooth, a small piece of tooth and filling going down plaintiff's trachea into her lung and being coughed up some months later. The tooth extracted was a dead one, with a large filling in it. The evidence shows that such teeth are brittle and often break to pieces under the forceps. The evidence also shows that Dr. Bloomenthal, a practicing dentist since 1898, for the past thirteen years had specialized entirely in the extraction and X-ray of teeth. Two other reputable and experienced dentists of Chicago testified that Dr. Bloomenthal, in doing plaintiff's work, followed the usual and customary method as approved and employed by extraction experts in Chicago at the time. As to this there is no conflict. No witness, either lay or expert, testified that anything done by Dr. Bloomenthal in extracting plaintiff's tooth was negligent or unskillful, or that he had omitted to do anything which a reasonably careful and skillful dentist would have done under the same or similar circumstances, or that in the exercise of due care and skill he should have known that a fragment of tooth and filling had gone down plaintiff's throat. This explanation by the defendants tending to show that the injury complained of, though unusual, was not due to any lack of care on their part, was sufficient to overcome the *prima facie* case of the plaintiff and rebut all presumptions of negligence, as such presumptions vanish when contrary evidence

is produced. *Coal Creek Drainage District* v. *Sanitary District, supra.*

The principle relied upon by plaintiff and contained in many cases cited in her brief is, that the doctrine of *res ipsa loquitur* applies where the defendant was in sole control of the acts, instruments and objects involved. It is sought to distinguish this case from certain cases cited by defendants where the doctrine was not applied. These cases cited by defendants hold that the doctrine cannot be applied where defendant did not have control, but was merely seeking to get control, of the acts, instruments and objects brought to bear upon the result complained of. Such a distinction is not justified in this case, because here Dr. Bloomenthal did not have complete control of the tooth in question but was seeking to get control of it when the crown fractured into many pieces during the extraction. In extracting a tooth the dentist cannot always produce the most favorable result, as the physical condition of the tooth itself must always be reckoned with. The mouth-pack was likewise shown not to have been under the complete control of Dr. Bloomenthal, as the expert evidence shows that in some manner, either by heavy breathing, nervousness, tendency to vomit or by an involuntary action of her tongue, the patient may have dislodged it. Thus, to say that Dr. Bloomenthal had complete control over either the tooth or mouth-pack is, under the circumstances, carrying the doctrine of *res ipsa loquitur* entirely too far.

A mishap, such as the flying of a fragment of tooth or filling into a patient's throat while the tooth is being extracted, is not of itself evidence of negligence or want of skill on the part of the defendant. One of the leading cases in this country on this subject is *Ewing* v. *Good,* 78 Fed. 442, in which the opinion was rendered by the late Chief Justice Taft, then sitting in the United States Circuit Court of Appeals. In that case plaintiff sued a physician to recover damages for an alleged improper treatment of her eyes, her

claim being that for his lack of proper care and skill she lost the sight of one eye and part of the sight of the other. In holding there could be no recovery Mr. Justice Taft said: "The naked facts that the defendant performed operations upon her eye, that pain followed, and that subsequently the eye was in such bad condition that it had to be extracted, established neither the neglect and unskillfulness of the treatment nor the causal connection between it and the unfortunate event herein. A physician is not a warranter of cures. If the maxim *res ipsa loquitur* were applicable to a case like this and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the ills that flesh is heir to."

In denying the application of the doctrine of *res ipsa loquitur* in *Chicago and Eastern Illinois Railroad Co.* v. *Reilly*, 212 Ill. 506, this court held that where a condition can be accounted for as readily on the hypothesis of pure accident and absence of negligence as upon the ground of negligence, the rule is well settled that proof of an injury is not, of itself, proof of negligence where nothing is done out of the usual course of business, unless that course itself is improper. In *Chicago Union Traction Co.* v. *Giese*, 229 Ill. 260, the application of the doctrine of *res ipsa loquitur* was upheld where the derailment of a street car resulted from an act of negligence and was not an accidental happening. The case of *Feldman* v. *Chicago Railways Co.* 289 Ill. 25, is distinguishable from the case at bar, for there a recovery was permitted under the doctrine of *res ipsa loquitur,* this court there holding that a *prima facie* case of negligence had been made out, and that "the record contains no evidence explaining the cause of the accident or overcoming the presumption of negligence." The case of *McClure* v. *Hoopeston Gas Co.* 303 Ill. 89, relied upon by

plaintiff, is not in point, for there the evidence showed "there was a gas leak, that it had been reported on the morning of the fire, and that plaintiff in error had a reasonable time, if the notice had been promptly acted on, to repair the leak before the fire." Thus specific negligence was shown, and the doctrine of *res ipsa loquitur* does not apply where there is evidence of specific negligence. (*O'Rourke* v. *Field & Co.* 307 Ill. 197.) No case has been cited where the doctrine of *res ipsa loquitur* has been applied by this court as an aid to recovery in a malpractice suit. In *Tefft* v. *Wilcox,* 6 Kan. 46, it was held that the question of negligence or lack of skill in a surgical operation is one of science, to be determined by the testimony of skillful surgeons. Likewise, *Pettigrew* v. *Lewis,* 46 Kan. 78, holds that "the mere fact that plaintiff's eyes have been weak and sore since the operation was performed does not prove negligence in the defendants nor establish a liability against them. To maintain her action the plaintiff should have offered evidence of skilled witnesses to show that the present condition of her eyes was the result of the operation and that it was unskillfully and negligently performed. This evidence must, from the very nature of the case, come from experts." In *Martin* v. *Courtney,* 87 Minn. 197, the court said: "Mere conjecture or supposition should not be sufficient to overcome the presumption in favor of the attending physician. Where the submission of important facts necessary to sustain a verdict rests on conjecture or suspicion, alone, it should not be said in any enlightened tribunal that it could reasonably sustain a verdict." In *Wurdeman* v. *Barnes,* 92 Wis. 206, the Supreme Court of Wisconsin upheld a directed verdict at the close of the evidence where no proof of negligence or lack of skill of the attending physician had been made. In *Vale* v. *Noe,* 172 Wis. 421, 179 N. W. 572, where plaintiff's tongue was cut when a burr slipped with which the defendant, a dentist, was working, the court held that there was no room for the application of the doc-

trine of *res ipsa loquitur* and that negligence of the defendant could not be presumed from the mere fact of injury under the circumstances therein involved.

Plaintiff's instruction No. 15 as given by the court enunciated the doctrine of *res ipsa loquitur* by stating, in substance, that if defendants were in sole control of acts, instruments and objects used in administering the anesthesia and in extracting the tooth, and, as a proximate result of such acts, instruments and objects a portion of tooth went into the lung of plaintiff through her mouth, and if the jury found "that in the ordinary course of events such an occurrence would not happen if those in control of such acts, instruments and objects use ordinary care, then the occurrence itself may afford reasonable evidence, in the absence of evidence to the contrary of equal weight, if there is such absence, that the occurrence arose from want of ordinary care." This instruction should not have been given. The presumption raised by the doctrine of *res ipsa loquitur* does not require "evidence to the contrary of equal weight" to overthrow it, for, as above stated, such presumption is not of itself evidence but arises as a rule of evidence and yields to any contrary proof. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts, and as soon as any evidence is produced which is contrary to the presumption which arose before the contrary proof was offered, the presumption vanishes entirely. (*Osborne* v. *Osborne, supra; Sielbeck* v. *Grothman,* 248 Ill. 435; *Lohr* v. *Barkmann Cartage Co. supra; Coal Creek Drainage District* v. *Sanitary District, supra.*) In *Johnson* v. *Pendergast,* 308 Ill. 255, this court held: "The existence of the *prima facie* case is provisional and does not change the burden of proof but only the burden of introducing further evidence. It means only that a determination of a fact shall be sufficient to justify a finding of a related fact in the absence of any evidence to the contrary. The only effect is to create the necessity of evi-

dence to meet the *prima facie* case created, and which, if no proof to the contrary is offered, will prevail." In no case has this court held that "evidence to the contrary of equal weight" was necessary to overcome the presumption arising under the rule of *res ipsa loquitur*. The presumption raised in the first instance by that doctrine was rebutted by the evidence produced by the defendant and it could not thereafter be properly applied. Under these circumstances the trial court erred in giving an instruction directing the application of the doctrine of *res ipsa loquitur* and in allowing plaintiff's attorney to argue it before the jury.

For the above reasons the judgment will be reversed and the cause remanded.                    *Reversed and remanded.*