Florence Kraus, a Minor, by Robert Kraus, Her Father and Next Friend, Appellee, v. Becker, Ryan & Company and Blecker Beauty Shops, Inc., Appellants.

Gen. No. 35,243.

Heard in the third division of this court for the first district at the June term, 1931. Opinion filed March 16, 1932.

MILLER, GORHAM & WALES and R. W. MARROW, for appellants.

MICHAEL F. MULCAHY and CHARLES A. SCOTT, for appellee; STUART B. KROHN, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Florence Kraus, a minor, by Robert Kraus, her father and next friend, brought an action of trespass on the case against the defendants to recover damages

for injuries alleged to have been sustained by her while undergoing treatment in a beauty parlor conducted by defendants. The jury returned a verdict in favor of plaintiff for $7,500 against both defendants, upon which judgment was duly entered. This appeal is prosecuted by defendant, Becker, Ryan & Company, a corporation.

The declaration, consisting of one count, charged that Becker, Ryan & Company owned and maintained a department store, and in connection with the defendant, Blecker Beauty Shops, Inc., owned, maintained and operated in said store and building a certain beauty shop, and maintained diverse machinery and curling irons which were used for curling women's hair and giving other treatments; that on December 12, 1929, plaintiff entered the department store of the defendant, Becker, Ryan & Company and the beauty shop for the purpose of having certain waves and other treatment given to her hair; that she was sitting in a seat provided by the defendants for the purpose of having said work performed upon her hair, and was in the exercise of ordinary care for her own safety before and during the time that treatments were being performed upon her; that in connection with said work, defendants attached various curling irons and other apparatus to her hair, which were heated by electricity, and were under the sole and exclusive control of defendant; that it was the duty of defendant to exercise reasonable care and caution in handling, operating and manipulating said curling irons and other apparatus, but that defendant made default and carelessly, negligently, improperly and recklessly operated, controlled and handled said curling irons and other apparatus so that they became very hot and dangerous and burned plaintiff's hair, scalp and head, causing severe injuries. To this declaration the defendants interposed pleas of the general issue, and Becker, Ryan & Company filed

an additional special plea of non-ownership and non-operation.

The essential facts disclose that plaintiff, a girl 17 years of age at the time of the accident, went to the beauty shop of the defendants about 7:45 o'clock p. m. on the evening in question for the purpose of having a "finger wave" in her hair. This was accomplished by manipulation of the operator's fingers on the hair after first wetting the same with a water and flaxseed solution. Thereafter a bowl shaped electric lamp was suspended in close proximity to plaintiff's head, and the current was turned on in the lamp to dry her hair. After adjusting the electric drier and turning on the current, the operator in charge left plaintiff sitting there alone and proceeded to attend another customer. After a lapse of about five minutes, during all of which time the operator was absent from the plaintiff, someone in the shop called the operator's attention to the fact that plaintiff had slumped in her chair, and was apparently unconscious. The operator thereupon administered cold towels, but failing to restore consciousness, called the manager of the shop, who summoned Dr. Walter A. Sittler, a physician. Plaintiff's father was then summoned, and upon his arrival, found plaintiff reclining on a couch attended by the doctor. As the doctor was unable to revive plaintiff, he and the father carried plaintiff to a cab in which she was taken home and put to bed, where she remained unconscious until the following day.

Plaintiff's father testified that when he arrived at the beauty shop, his daughter's head was wringing wet; that he felt her head and observed a big red spot that looked like a silver dollar on the left side of her head. Plaintiff testified that after she had sat under the drier for a while she remembered nothing until the next evening, when she regained consciousness, and then felt a scab on her head. She stated, however, that

it was on the right side of her head and not on the left side, as testified to by her father. To controvert this evidence, Dr. Sittler testified that he examined plaintiff when he called, but observed no burn or other objective symptoms.

Plaintiff remained in bed for several days, and on January 3, 1930, approximately three weeks after the accident, Dr. Thorpe, the family physician was summoned. He found plaintiff suffering from a third degree burn on her head, located on the right hand anterior portion of the skull. The burn had an area of about 2½ inches, was circular in shape, the scalp was burned to the bone and the odor was very obnoxious. He shaved plaintiff's head, removed all the dead particles of flesh, and applied antiseptic dressings. Within three days after this visit, Dr. Thorpe left for an extended trip to the Orient, and did not again visit plaintiff.

On January 7, 1930, Dr. V. E. Gonda was called and examined plaintiff. According to his testimony, he found a wound over the left frontal bone near the function of the hairy part of the head. The wound was covered with a scab and emitted an obnoxious odor. He applied oily dressings which finally removed the scab, and then observed that the wound had penetrated to the bone. Later he observed that the bony substance of the skull was also involved, and this condition lasted for about two weeks until the wound healed. Dr. Gonda regularly treated plaintiff during this period. He testified that she did not complain much about the local wound, but was easily excitable, and could not sleep nights. He also examined her for evidence of nervous disorders and found the reflexes were exaggerated; that there was a Romberg sign, meaning that the patient could not stand with her eyes closed without swaying. He also observed a sort of dermagraphia, which means that when the patient's skin was

struck slightly, there was a marked reaction in the form of a red line, which appeared and stayed longer than in a normal person. Plaintiff had a pulse of over 100. The witness testified that she came to his office three times weekly for the first three months, and then twice weekly for about three months longer. Plaintiff showed fair progress at first, and was advised to return to work, but during the following summer she became subject to frequent fainting spells, loss of weight, and appeared pale and weak. In reply to a hypothetical question, Dr. Gonda testified that plaintiff's condition might be the result of a burn such as was described in the question.

Leila Swing testified on behalf of the defendants that she was the operator in charge of plaintiff on the evening in question; that she first wet plaintiff's hair with a solution of water and flaxseed, then made the wave in plaintiff's hair with her fingers and a comb, placed a towel around plaintiff's neck, sat her in an ordinary cane chair, adjusted the drier and turned on the electric current; that no attachment or apparatus was fastened to the hair during the process; that the round metal cap or bowl at the bottom of the drier never gets hot enough to burn the hands; that she did not see any fire, flash, smoke, or explosion in, around, or near the drier that evening, and that the drier was in perfect working order. Witness also testified that she had been a licensed operator for more than seven years, and that the apparatus used on plaintiff was the usual and customary form of drier then used in beauty shops.

Fred D. Vigel testified that he was supervisor of the Blecker Beauty Shops in December, 1929, and in the presence of the jury demonstrated the hair drier and described the apparatus as an aluminum shaped cap or bowl, which may be raised, lowered and tilted so as to be adjustable to a person's head. In the rear of the

aluminum cap and attached thereto is a switch controlled motor giving three degrees of temperature, cold, warm and hot. The top of the bowl contains a 100-watt electric bulb. The rear part of the bowl contains a wire coil which generates heat through the electric current from the motor, and a fan which diffuses the heat from the coil and electric light bulb over the patient's head. Both the coil and the fan are separated from the main bowl by a wire meshed guard, to prevent contact of the person's head and hair with the fan and coil located behind the wire guard.

Michael Gordus, an electrician, testified that he had approximately ten years of practical experience with electrical equipment of all kinds. When shown the drier, which is an exhibit in the case, he stated that no short circuit of ordinary city current would heat up the coil back of the screen sufficiently to cause a burn on a person's head because the fan keeps the coil continuously cool; that the coil carries a certain amount of heat, but the air from the fan is always sufficient to keep it cool; that when a wire or coil is overloaded it may become hot, but in that event the fuse will blow; that it would be impossible to overload the coil in this type of machine because the coil is designed to take care of the voltage applied on the line.

Plaintiff proceeds upon the theory that the evidence adduced by her was sufficient to justify the court in submitting the cause to the jury under the charge of general negligence alleged in the declaration, even though no specific negligence was averred or shown upon the hearing, and in support of her contention she relies on authority enunciating the well known rule that where there is some evidence in the record which fairly tends to prove the allegations of the declaration, the verdict of the jury should not be disturbed. The rule thus stated has ample support in this State, but the fallacy of plaintiff's contention lies in the appli-

cation thereof to the instant case. Plaintiff offered no explanation as to the manner in which this injury was sustained. She does not contend that it resulted from contact of her head or hair with the heated coil or bulb contained in the electric drier or with the aluminum cap suspended over her head. Neither does she say that it resulted from a direct electrical current due to defective apparatus or to an improper adjustment of the cap by the operator to plaintiff's head. These various contingencies are vaguely suggested as possible causes of the injury by the circumstances of the case, but are purely conjectural and not based on any facts from which negligence on the part of defendants may be inferred.

From the averment contained in plaintiff's declaration that "the curling irons and apparatus . . . were under the sole and exclusive control of defendants," and the lack of any specific charge or proof of negligence by plaintiff, it would seem that she seeks to invoke the doctrine of *res ipsa loquitur,* without expressly relying thereon. Under this doctrine, whenever a thing which produces an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford prima facie evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want or care. *Bollenbach v. Bloomenthal,* 341 Ill. 539. To the extent that this doctrine may be invoked as a substitute for specific proof of negligence, it is a variance or exception to the general rule that negligence must be specifically alleged and proved. The reason for the rule rests upon the presumption that in view of the surrounding circumstances the accident would not have happened had the defendant used ordinary care,

and therefore, when the surrounding circumstances leave room for a different presumption, the reason for the rule fails. *McGowan v. Nelson,* 36 Mont. 67.

In well considered cases resting upon the application of the doctrine of *res ipsa loquitur,* as tending to establish prima facie evidence, and where liability was upheld, it will be invariably found that in every instance there was an essential element present, that is proof of the existence of the cause or thing which was alleged to have been the negligent act which produced the injury, or proof of such facts from which the existence of such cause or thing constituting the alleged negligent act was the only reasonable inference that could be properly drawn. *Conover v. Delaware, G. & W. R. Co.,* 92 N. J. L. 602. Thus in *Benedick v. Potts,* 88 Md. 52, 41 L. R. A. 478, plaintiff was riding as a passenger in a roller coaster conducted in an amusement park by the defendant, and he was picked up in an unconscious condition in one of the tunnels through which the roller coaster had passed with a wound or bruise on his forehead, but with no evidence of any agency which might or could have caused the injury. The court held that there was no evidence sustaining the cause of action, and in the course of its opinion said:

"The maxim does not go to the extent of implying that you may, from the mere fact of an injury, infer what physical act produced that injury; but it means that when the physical act has been shown, or is apparent, and is not explained by the defendant, the conclusion that negligence superinduced it may be drawn, as a legitimate deduction of fact. It permits an inference that the known act which produced the injury was a negligent act, but it does not permit an inference as to what act did produce the injury." In seeking to differentiate the foregoing case from that before us, plaintiff in her brief says that in the instant case the

undisputed evidence is that plaintiff was put under an electric device which "if not properly administered" and in close proximity to the scalp of plaintiff, which was soaking wet at the time, could readily produce the burn sustained by plaintiff. If there were any evidence in the record to sustain the contention that the electric device was not properly administered, that fact would afford a basis for explaining the cause of plaintiff's injury and would amount to negligence, but we find no evidence whatever in the record on which such a conclusion might be based, and therefore regard the *Potts* case and authorities to like effect as applicable.

In our opinion this is not a case of *res ipsa loquitur.* It was therefore incumbent upon plaintiff to allege and prove negligence on the part of defendants. The declaration, although inartistically drawn, is not defective; it charges general negligence in handling, operating and controlling the apparatus under defendants' control. The proof, however, fails to support the charge and no negligence is shown. Therefore, the judgment cannot stand.

Defendants urge other grounds for reversal, but in view of our conclusion upon the main point in the case, we consider it unnecessary to discuss the other assignments of error.

For the reason stated, the judgment of the superior court will be reversed and the cause remanded.

*Reversed and remanded.*

WILSON, J., concurs.

HEBEL, P. J., dissents.

Since filing our opinion herein, appellee has filed a motion to modify the remanding portion of the order and to enter an order in lieu thereof reversing said cause without remanding, and in support of said motion appellee has filed suggestions admitting of record that upon any future proceeding or trial of said cause appellee would be unable to produce or introduce any

further, different or additional evidence as to the manner in which the accident in question occurred. No countersuggestions or objections having been made to this motion, our original order of March 16, 1932, is, therefore, modified in accordance with appellee's suggestions and admissions, and the judgment of the circuit court of Cook county is herewith reversed without remanding.

*Reversed.*

WILSON, J., concurs.

HEBEL, P. J., concurs in the modification.