Gladys Johnson Graham, Plaintiff-Appellant, v. St. Luke's Hospital, an Illinois Corporation, Not for Profit, and Dr. Eugene A. Edwards, Defendants-Appellees.

Gen. No. 48,966.

First District, Second Division.
February 4, 1964.

Bellows and Pickard, of Chicago (Jay W. Bellows and Theodore R. Pickard, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for appellee, St. Luke's Hospital. Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, Caryl P. Bonotto and John M. O'Connor, Jr., of counsel), for appellee, Edwards.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a judgment on a verdict directed for the defendants, St. Luke's Hospital and Dr. Eugene A. Edwards, at the close of plaintiff's case

and entered in the Circuit Court of Cook County on May 4, 1962. The complaint alleged negligence against the defendants arising out of a hypodermic injection given by their alleged agent nurse on June 8, 1952, while the plaintiff, Gladys Graham, was recuperating from a hysterectomy operation in St. Luke's Hospital.

Plaintiff-appellant alleges several errors:

(1) that a verdict was improperly directed because questions of fact demanding a jury decision were raised; (2) that plaintiff introduced sufficient evidence of the negligence of the defendants, with consequent damages to plaintiff to make out a prima facie case; (3) the court erred in refusing to allow plaintiff to phrase her hypothetical question in a manner favorable to her interpretation of the facts; (4) the court erred in refusing to allow plaintiff to amend her complaint against the defendant-doctor.

The law to be applied in determining whether a verdict was properly directed is familiar and uncontested. On motion to direct a verdict, the trial court should overrule the motion if, upon an examination of the record there is any evidence which fairly tends to prove the allegations of the plaintiff's complaint. When the evidence is considered in its aspect most favorable to the plaintiff there is a total failure to prove any necessary element of her case, the motion for a directed verdict should be sustained. The evidence may not be weighed, and all contradictory evidence or explanatory circumstances must be rejected. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847 (1950); Weinstein v. Metropolitan Life Ins. Co., 389 Ill 571, 60 NE2d 207 (1945); Hogmire v. Voita (abst), 319 Ill App 644, 49 NE2d 811 (1943).

In her complaint the plaintiff alleged that the defendants through their duly authorized servant, a cer-

150

tain student nurse, were careless and negligent in one or more of the following ways: (a) Carelessly and negligently and improperly caused an injection of a hypodermic needle in the left hip of the plaintiff while she was a patient at the hospital; (b) Carelessly and negligently and improperly used or employed an incompetent servant or student nurse to inject a hypodermic needle in the left hip of plaintiff; (c) Carelessly, negligently and improperly failed to properly supervise the said injection of hypodermic needle in the plaintiff; (d) Carelessly, negligently and improperly failed to maintain good and adequate hygienic conditions and equipment in said hospital; (e) Carelessly and negligently failed to exercise that degree of care required by good medical practice; and (f) Otherwise, carelessly and negligently conducted their hospital subsequent to the aforementioned surgical operation, so as to cause irreparable damage to the plaintiff.

The plaintiff's story is a simple one. She was admitted to St. Luke's Hospital on the 27th of May, 1952. She was operated on for a hysterectomy on the 29th of May by the defendant, Dr. Edwards. The operation was very successful and she was recuperating satisfactorily until June 8, 1952, when she alleges the following events occurred. At about 11 p. m. a nurse entered, lifted her pajama top and hurriedly injected a hypodermic needle in her back. She screamed and was attended by interns and two nurses. She testified she was in severe pain for the remainder of the night. On the following day she stated that she was examined by Dr. Edwards, that he alluded to her "mishap" and that hot packs were prescribed.

Following her release from the hospital the plaintiff entered a Mrs. Porterfield's nursing home for convalescence. She testified that the hot pack treatments

151

were continued and that while at Mrs. Porterfield's she was visited by Dr. Reaney on three occasions.

Plaintiff testified that while she was in the hospital the site of the alleged injection became ridgelike in an area larger than her hand. Through the years, plaintiff has suffered severe pain and physical deformity. Her left leg has turned in so that she required special shoes and braces. She has been to many doctors throughout the United States and Canada. On one occasion a nerve block was performed and she has undergone several other operations to remedy the pain and deformity.

Her expert witness, Dr. Speigel, a neurologist, testified that he had examined the plaintiff in 1957, had found tenderness in the sciatic region and had diagnosed her illness as causalgia. He defined causalgia as a burning pain in the area of distribution of a nerve, which may or may not have been injured. He testified that causalgia first was diagnosed during the Civil War, that it is rare and that when seen the patient is usually a tense emotional person. While Dr. Speigel was testifying, the plaintiff tendered to him a hypothetical question for the purpose of establishing that a hypodermic needle injected into the sciatic notch, under plaintiff's theory of the facts, could or might have caused the infirmities from which the plaintiff suffered. Dr. Speigel did not answer this question due to the insistence of opposing counsels that more facts be added and the impossibility of answering the question after those facts were present. Dr. Speigel was able to testify in regards to safe or unsafe areas of injection in the lower back. He testified that it is necessary to avoid the sciatic notch and the area immediately below it and that the upper outer quadrant was the safest. The plaintiff herself was unable to locate the exact point of the injection, but

merely designated the lower back-buttocks region as the area.

In all, the plaintiff presented five persons to testify. The plaintiff recounted her version of the story. Dr. Edwards, an adverse witness, for the most part denied any knowledge of the injection or treatment for a back ailment thereafter. Mrs. Porterfield testified, contradicting parts of both the plaintiff's testimony and Dr. Edward's testimony. Dr. Speigel testified to substantially what has been above related. Dr. Barth, an industrial surgeon, testified that he had referred the plaintiff to Dr. Edwards for a hysterectomy. Although plaintiff sought to have Dr. Barth testify on injection procedure, he was prevented from testifying as a proper foundation had not been established.

The plaintiff sought to introduce thirteen exhibits. Some were hospital records, charts, receipts, insurance company forms, a hypodermic needle and life tables. The most important exhibit was exhibit three, an insurance claim signed by Dr. Edwards, alluding to pain "at the site of the injection" and "left buttock to left foot." This exhibit was rejected as hearsay against the hospital and not admitted against the doctor because the plaintiff did not establish any grounds for it after the doctor refused to admit it. Without discussing each of the rejected exhibits, a reading of the record discloses that those which were rejected were properly rejected for failure to establish a proper foundation or failure to show relevancy of the exhibit to the proposition sought to be proved.

The defendants throughout the proceeding have taken the position that no injection was given to the plaintiff in the lower back at 11 p. m. on June 8. The hospital records are ambiguous concerning the injection alleged by the plaintiff. The plaintiff did not produce testimony or take the depositions of the

153

nurses or interns who she alleges were present the evening of the occurrence. The defendants dismiss any allusion to "pain at the site of injection" in the records and say that this refers to injections in the arm, many of which plaintiff received.

Indeed it was this insistence by defendants that the injections were in the arms alone which prompted the judge to require a change in plaintiff's hypothetical question to Dr. Speigel.

Reading the evidence most fairly for the plaintiff and without weighing the testimony it is clear that plaintiff offered no evidence to support (b), (c), (d), (e), or (f). There was no evidence introduced which would tend to show "incompetency" in the nurse who allegedly injected the needle, or to show "improper supervision," or to show lack of "good and adequate hygienic conditions and equipment," or to show "that degree of care required by good medical practice," or to show that defendants "otherwise carelessly and negligently conducted their hospital subsequent to the operation."

She did introduce sufficient evidence to raise a question of fact that she may have received a hypodermic needle injection in the left hip to support (a). If plaintiff, in addition, had presented a prima facie case, this question of fact would have been sufficient to bring the case to the jury.

 Plaintiff founded her complaint upon a theory of negligence and set out to prove as in the ordinary damage suit that she: (1) was in exercise of due care and caution; (2) suffered an injury; (3) the defendant was negligent and careless and that said negligence and carelessness was the proximate cause of the injury. The hypothetical question which the plaintiff posed to Dr. Speigel was directed to establishing that presuming that all the events occurred which the plaintiff related, might or could these have

154

caused the infirmities complained of. The counsels for defendants were allowed to insert additional disputed facts into the question until it became so unwieldly as to be impossible to answer. There is no doubt that the court acted incorrectly in allowing this unnecessary harassment. It is clear that a hypothetical question is not improper merely because it includes only a part of the facts in evidence. Hogmire v. Voita (supra); C. & E. I. R. Co. v. Wallace, 202 Ill 129, 66 NE 1096 (1903). Just as a witness cannot be asked for an opinion based on hearing conflicting testimony, so a hypothetical question cannot be put embracing conflicting evidence. Where the testimony is conflicting, counsel is entitled to base such questions on the testimony supporting his own theory of the case and any contrary testimony may be called to the attention of the expert witness on cross-examination by varying the hypothesis. People v. Geary, 297 Ill 608, 131 NE 97 (1921); People v. Rongetti, 344 Ill 278, 176 NE 298 (1931); King and Pillinger, Opinion Evidence in Illinois (Cal, 1942). It is true that the original hypothetical question cannot ignore any material, undisputed facts which might effect the opinion. Here, however, the majority of the exclusions brought up by the defendants were disputed matters. It is clear that the court erred in not allowing plaintiff to formulate her question under her theory of the case. We believe, however, that this error is not sufficient to merit a reversal because the plaintiff otherwise failed to make a prima facie case.

 The theory of the court in directing the verdict was that a prima facie case could not be established without expert medical testimony to show want of care. Attorney for the plaintiff insists that he only had to show and that he did put into evidence that the plaintiff received a hypodermic needle in her buttocks, that she experienced pain, that subsequently she was

155

given care by hot packs. His position basically is that the production of pain in this situation raises an inference of lack of care and that this establishes his prima facie case. In other words, plaintiff relies upon res ipsa loquitur. See 8 Am Jur Proof of Facts, Nerve Injuries, Proof 9 (1962).

Plaintiff places special reliance upon Hogmire v. Voita (supra), where this court, in reversing a directed verdict for a defendant dentist, charged with malpractice in an injection of novocaine into the gums of plaintiff, found that the burden was upon plaintiff to prove by expert testimony that defendant was negligent or unskillful in his treatment of her, but that the plaintiff had met the burden because of the answer to a long hypothetical question given by an expert witness. The Hogmire case makes clear that in order to recover in a malpractice case, the plaintiff must show by affirmative evidence: first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for consideration of the jury. The Hogmire case carefully reviewed the major malpractice cases in Illinois and approved the above principles in Moline v. Christie, 180 Ill App 334 (1913); Phebus v. Mather, 181 Ill App 274 (1913); Wallace v. Yudelson, 244 Ill App 320 (1927); Bollenbach v. Bloomenthal, 341 Ill 539, 173 NE 670 (1930); and Shutan v. Bloomenthal, 371 Ill 244, 20 NE2d 570 (1939). See, also, Olander v. Johnson, 258 Ill App 89 (1930) and cases cited therein; and Hall v. United States, 136 F Supp 187 (1955) (applying Illinois law) and cases cited therein.

Concomitant with the above double expert requisite, Illinois has held that res ipsa loquitur does not automatically apply to malpractice cases. Bollenbach v. Bloomenthal (supra); Hogmire v. Voita

156

(supra). It is necessary for the plaintiff to show by expert testimony not only that the injury occurred but that such event does not ordinarily occur in the ordinary course of events without negligence. See discussions Hall v. United States (supra); Anno: Malpractice—Res Ipsa Loquitur, 82 ALR2d 1262.

Although in Hogmire v. Voita (supra) the court found that expert testimony must be introduced both as to the lack of skill or negligence of defendant and to show that his want of skill or care caused injury to the plaintiff, it, nevertheless, reversed, holding that the hypothetical question posed to Dr. Fouser established a prima facie case both as to the issue of presence of negligence and to causation. Unfortunately, that question was not preserved in the opinion, we only know that it encompassed facts in evidence. In this case there was no testimony regarding types of needles or depth of injection or anything to show the proper way to inject a needle in the buttocks as there was in Hogmire v. Voita.

We believe that no expert evidence was introduced on proper injection procedure other than the testimony of Dr. Speigel as to "the need to avoid the sciatic notch." Nor was it established that causalgia was the result of the injection. Dr. Speigel testified that causalgia may result from injury or otherwise. Expert testimony must be introduced to show that it probably was not caused otherwise. Hall v. United States (supra). In the Hogmire case it was established that the tooth extraction and novocaine shot definitely caused the infection. In our case there is not sufficient expert basis on which to build a prima facie case as to careless or negligent injection. See, 8 Am Jur Proof of Facts, Nerve Injuries, Proof 10 (1962); Huber v. Protestant Deaconess Hospital Ass'n, 127 Ind App 565 (1956). For this reason, the plaintiff has failed to offer evidence on necessary components of the case

157

and, therefore, has failed to make out a prima facie case.

■ Plaintiff has further implied that expert testimony is not needed since this is a case of negligence and not malpractice. In a sense, this is a matter to be determined by the court in a particular case, but general guidelines have been laid down. The rule is that expert testimony is not required if the negligence is so grossly apparent or the treatment is of such a common occurrence that a layman would have no difficulty in appraising it. 2 Harper and James, The Law of Torts, § 17.1, 968; Adamson, Medical Malpractice: Misuse of Res Ipsa Loquitur, 46 Minn L Rev 1043, 1052. The rule has been applied to cases involving anesthesia, tonsillectomy, X-rays and in some cases injections. The application of the exception to injections has been most recognized in California where res ipsa loquitur in malpractice cases also has been largely accepted. See Bauer v. Otis, 284 P2d 133 (1955); Wolfsmith v. Marsh, 51 Cal2d 832 (1959); Seneris v. Haas, 45 Cal2d 811 (1955). Contra, see Toy v. Rickert, 53 NJ Super 27 (1958); Hall v. United States (supra).

We believe that the trial court properly characterized the alleged injection in this case as one which required medical testimony as to the standard of care. We reaffirm the holding of Hogmire v. Voita in this respect. Illinois has applied the common knowledge exception to X-ray cases (Johnson v. Marshall, 241 Ill App 80 (1926); Holcomb v. Magee, 217 Ill App 272 (1920), where the court recognized that res ipsa loquitur applied to X-ray burns) and the gross negligence exception to sponge cases (Piper v. Epstein, 326 Ill App 400, 62 NE2d 139 (1945); Hall v. Grosvenor, 267 Ill App 119 (1932)). The injection of a hypodermic

158

needle in our view cannot be brought within that exception.

The doctrine of malpractice is not restricted to the acts of doctors or surgeons, the doctrine goes rather to the particular activity involved. No matter who inserts the hypodermic needle, the injection of the needle is such an act that it requires a standard of care which can only be established by experts.

■■■ Separating for a moment the suit against Dr. Edwards, it is clear that a physician is not liable for the negligence of a nurse or intern, who are employees of a hospital and not under his personal control or supervision. Olander v. Johnson (supra) and cases cited therein at 98, 99; Harlan v. Bryant, 87 F2d 170 (1936). In this case, the presence of the nurse who allegedly gave the injection was purely fortuitous. She was functioning in the course of hospital duties and not as an agent of Dr. Edwards or under his orders.

■■■ Plaintiff's last point is that the court refused to allow plaintiff to amend her complaint against Dr. Edwards to conform the pleadings to the proof. Plaintiff points out that the evidence for plaintiff established that Dr. Edwards knew of the nerve injury to plaintiff, had prescribed hot packs to treat it and yet had neglected to refer her to a specialist. There was evidence introduced by the plaintiff through the Doctor's own testimony to show factual proof sufficient for the court in its discretion to allow a motion to conform the pleadings to the proof. The court did not err in refusing to do so, however. It is clear that a doctor is not usually liable for errors in judgment or diagnosis. Kruger v. McCaughey, 149 Ill App 440 (1909); Wallace v. Yudelson (supra); Moline v. Christie (supra). Where a suit is brought against a

159

doctor for this purpose, however, there is no prima facie case made out without the testimony of expert witnesses to establish negligence in the failure to refer the patient to another doctor. There was no evidence of such a character here.

The burdens which the plaintiff must bear, in this case especially, are difficult to meet. We feel, nevertheless, that the directed verdict must be upheld. The plaintiff did not even try to establish that the particular alleged injection in this case was done in a negligent or careless manner. Not only did she neglect to establish this by expert testimony, but she failed to call as a witness or take the deposition of the nurse who allegedly gave the injection. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.