MILDRED OHLIGSCHLAGER, Plaintiff-Appellant, v. PROCTOR COMMUNITY HOSPITAL et al., Defendants-Appellees.

(No. 70-208;

Third District—May 16, 1972.

82

84

STOUDER, P. J., dissenting.

Elmo E. Koos, of Peoria, for appellant.

Lyle Allen and David Nicoll, both of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Suit was brought by plaintiff against defendants for injuries sustained by her while she was a patient in the Proctor Hospital under the care of the defendant, Dr. Joe Cannon. In September, 1966, plaintiff, a fifty-five year old obese woman, was admitted to the Proctor Hospital, arrangements for her admittance having been made by the defendant, Dr. Joe Cannon. Dr. Cannon had been treating her for a condition causing vomiting and diarrhea since September 13, 1966. She was quite ill but not comotose upon her admission. She checked into the hospital at about 4:40 P.M. and at 6:30 Cannon appeared and inserted a needle into plaintiff's arm and commenced intravenous feeding. Certain liquids were intravenously fed for the purpose of correcting the dehydrated condition of the plaintiff and eventually a substance known as Sparine was added to the intravenous feedings. The purpose of the drug is to stop vomiting. Directions by the manufacturer cautioned that care should be exercised during the intravenous administration not to allow perivascular extravasation for the chemical irritation may be severe. The instruction also cautions that care should be taken to prevent the concentrate from getting on the skin or clothing of patients, nurses or others who are handling the preparation and that injections of Sparine should be made only into vessels previously undamaged by multiple injections or trauma. The drug is considered to be an irritant and there is little question that the defendants were aware of the dangerous properties of the drug in the event of infiltration.

Cannon testified that he had knowledge of the dangerous properties of Sparine but he did not tell this to anyone at the hospital or to the plaintiff. He ordered 50 milligrams of Sparine added to the intravenous feeding at 6:40 P.M. and every six hours thereafter as needed, but testified that he had no personal knowledge if the drug was administered. He had no recollection of giving any additional instructions because of the additive. The chart at the hospital indicated that at 10:40 plaintiff was

again given Sparine. Cannon testified that he assumed the fluid in the intravenous feeding injured plaintiff.

Plaintiff sustained injury to the inner aspects at her elbow, a little above and below the same, and it was necessary to subsequently perform a skin graft on the area. The record disclosed that the injury was caused by extravasation, *i.e.*, the fluid being fed intravenously getting into the flesh area and outside of the vein, and destroying the flesh in that area. The testimony indicated that the drug Sparine could cause such an injury. It is conceded that the injury occurred sometime after 6:30 P.M. on September 13 and prior to 7:00 A.M. the following day.

Plaintiff's complaint consisted of four counts and after she had rested her case she was granted leave to and did file two additional counts. The trial court dismissed the first two counts of plaintiff's complaint prior to trial and at the close of plaintiff's case directed a verdict in favor of both defendants as to the remaining four counts.

Plaintiff contends that the trial court erred in sustaining defendant Proctor Community Hospital's motion to dismiss Count I, which count was based on the theory of *res ipsa loquitur*, and for dismissing Count II, that charged the defendant hospital with negligence based on lack of informed consent.

■■ In *Graham v. St. Luke's Hospital*, 46 Ill.App.2d 147, 196 N.E.2d 355, the court stated:

"\* \* \* [I]n order to recover in a malpractice case, the plaintiff must show by affirmative evidence: first, that defendant was unskilful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for consideration of the jury."

Count I fails to charge the defendant with being unskilled or negligent and that this lack of skill and negligence caused the injury. The law requires that there be proof of lack of skill or negligence and the complaint must therefore be drafted to meet that requirement. *Bollenbach v. Bloomenthal*, 341 Ill. 539, 173 N.E. 670.

Count II of the complaint alleges substantially the same facts as Count I with the added charge that the defendant hospital failed to obtain the informed consent of the plaintiff before inserting the needle for the intravenous feeding and failed to inform plaintiff of the attendant risk and dangers of such medical procedure.

■■ We believe the law in Illinois as stated in *Green v. Hussey*, 127 Ill. App.2d 174, 262 N.E.2d 156, is applicable. The court there stated:

"We conclude that to establish liability for defendants' failure to inform plaintiff of the foreseeable risks or results involved in X-ray and cobalt therapy and available alternatives, if any, plaintiff had the

burden of proving by expert medical evidence that the reasonable medical practitioner of the same school, in the same or similar circumstances, would have told the patient of such risks, or that the disclosures as made by the defendants did not meet the standard of what a reasonable medical practitioner would have disclosed under the same or similar circumstances. * * * Also, plaintiff had the burden of proving by expert medical testimony that such failure was the proximate cause of her damage."

It is not sufficient for plaintiff to merely allege the failure to obtain the informed consent and to allege the failure on the part of the defendant to tell the plaintiff attendant risks and damages. Count II of the complaint is insufficient for the reason that it fails to allege sufficient ultimate facts to state a cause of action.

■■■ Plaintiff next contends that the court erred in directing a verdict for defendant on the remaining counts. The parties are in accord that a verdict should be directed for the defendant when the evidence viewed in its aspects most favorable to the plaintiff so overwhelmingly favors the defendant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria and Eastern Railroad Company,* 37 Ill.2d 494, 229 N.E.2d 504.) "On motion to direct a verdict, the trial court should overrule the motion if, upon an examination of the record there is any evidence that fairly tends to prove the allegations of the plaintiff's complaint. When the evidence is considered in its aspect most favorable to the plaintiff there is a total failure to prove any necessary element of her case, the motion for a directed verdict should be sustained. The evidence may not be weighed, and all contradictory evidence or explanatory circumstances must be rejected." *Graham v. St. Luke's Hospital, supra.*

Plaintiff proved her injury and proved that she was injured in the defendant hospital while under the care of defendant Cannon. The question is whether or not she proved by competent expert testimony that the injury was caused by the negligence of either or both of the defendants.

Plaintiff in her complaint, Count III, charges that defendant Proctor Hospital:

"[N]egligently and carelessly did one or more of the following;

a. Failed to inform and advise plaintiff of the nature of the proposed medical procedure, the probability of success, alternate methods of treatment, and the risks and unforeseen conditions within the plaintiff's body.

b. Failed to associate in the treatment of Plaintiff, Mildred Ohligschlager, specialists in internal medicine.

c. Failed to make reasonable investigation and to make reasonable efforts which were usually and customarily done by the medical profession in exercising ordinary care to determine whether the Plaintiff, Mildred Ohligschlager, could tolerate the medical procedure being treated intravenously.

d. Failed to make an investigation by way of history and examination under its exclusive control to determine the Plaintiff's physical condition immediately after the insertion of the needle into Plaintiff's right arm, and to form a judgment based upon reasonable medical certainty in the absence of Joe Cannon, M.D., one of its staff members, but in the presence of its other employees and nurses, as to whether or not the Plaintiff could withstand the traumatic effects of the insertion of intravenous fluids into the musculature of her right arm, notwithstanding numerous risks of which she was never informed.

e. Failed to follow the usual and customary procedure and standards in performing and carrying out the medical procedure of the preparatory insertion of a needle for the administering of fluids intravenously into Plaintiff's right arm.

f. Failed to heed her complaints of pain and suffering during the night after the inserting of the needle into her right arm."

In Count IV plaintiff made the same charges against the defendant Joe Cannon, with the exception of paragraph f. While the terms varied in the allegations in Count IV, the substance of the charge is the same.

Count VII jointly charges the defendant Cannon and the defendant hospital with being in charge of the administration of certain intravenous injection and additives, namely Potassium Chloride and Sparine, into the bloodstream of the plaintiff and further charged that they knew or in the exercise of ordinary care should have known of plaintiff's complaints and the condition which developed during the intravenous feeding and could have terminated said feeding or taken alternative alleviating measures and precautions but "due in whole or in part to the lack of adequate personnel, facilities and maintenance of said Defendant hospital, contrary to the provisions of Chapter 111½, Sections 147 and 151, Illinois Revised Statutes, failed to properly attend and render needed medical care and attention to Plaintiff" and directly and proximately caused serious and permanent injuries to her. The count further charges that both defendants became responsible to plaintiff "pursuant to Chapter 85, Section 6—102, Illinois Revised Statutes, 1965."

Count VIII is also a joint charge against both defendants. The substance of Count VIII is that the defendants jointly had the sole and exclusive care, custody and control of the administration of the intravenous fluids, that they knew the potential complications if the intravenous solu-

tion together with the additives were to infiltrate into the perivascular tissue of plaintiff's arm. That the plaintiff complained of severe pain and swelling in her arm and that defendants failed to heed plaintiff's complaints, and further failed to properly supervise said intravenous injection and feeding of those fluids and additives.

■■■ As to subparagraph a. of Counts III and IV, the record is devoid of any expert medical evidence that a reasonable medical practitioner of the same school in the same or similar circumstances would have told plaintiff of such risks or that the failure to disclose what reasonable medical practitioners would have done under the same and similar circumstances. (*Green v. Hussey, supra.*) The only testimony in the case was to the effect that it was not the custom or the practice that a patient be told of the possibility of infiltration or extravasation. Plaintiff has failed to establish by expert medical evidence that defendants had a duty to advise the plaintiff of the probabilities of success and alternate methods of treatment. The same is true of paragraphs b. and c. of said Counts III and IV. There is no testimony or evidence from which it can even be inferred that the defendants had a duty to consult with specialists in intenal medicine and the only testimony in the record is that there are no known tests to determine if extravasation will occur nor is it in degree predictable.

■■ The same can be said of subparagraph d. The only testimony relating to the examination made of plaintiff prior to the intravenous feeding or to the customary practice in making the examinations prior to intravenous feeding was the testimony of the plaintiff on cross examination and these tests relate to the condition for which plaintiff was confined and have no bearing upon the infiltration or extravasation that caused plaintiff's injuries. As previously noted, the testimony indicates there are no known tests to determine the tolerance of a patient for intravenous feeding.

■■ The record establishes that the defendant Cannon did the insertion of the needle into plaintiff's arm and not the defendant Proctor Hospital. Further the record is totally devoid of any evidence that Dr. Cannon improperly inserted the needle into plaintiff's arm and no attempt at any showing as to the proper procedure to be followed. From all that appears of record the needle was inserted into the vein in a competent manner. No evidence was presented by plaintiff to establish any damage to her arm that would cause infiltration of the fluids by the employees of Proctor Hospital when they attempted to insert the needle prior to the defendant Cannon's arrival.

It is necessary to note that the testimony of the doctors, four in number including the defendant Cannon, was to the effect that infiltration of the intravenous fluid could have been caused in any of the following

ways: (a) by the improper insertion of the needle; (b) when the needle was withdrawn; (c) by seepage through the walls of the vein; and finally (d) by thrombosis or a breakdown of the blood vessel wall. Dr. Palmer, called on behalf of the plaintiff, testified that a breakdown of the blood vessel wall does not happen immediately and it takes a little time to corrode the inside of the wall of the vessel. The amount of time would depend on the concentration of the different solutions and the blood vessel and it would depend upon the individual anatomy and the individual reaction to the medication. He further testified that this was a risk assumed in the use of any medication. The testimony shows that the infiltration occurs in five to ten percent of the cases of intravenous feeding, but that not all the infiltrations require treatment.

Dr. Richardson, a plastic surgeon who repaired plaintiff's arm, testified that the ulcerated condition of her arm could have been caused by the infiltration of blood from the patient's own vascular system or by the intravenous fluid itself, or by some drug that had been added to the intravenous fluids.

■■ The record does not establish that plaintiff was injured by reason of the additive Sparine or the Potassium Chloride to the intravenous fluid. Her claim tends to favor the theory that the additive Sparine was the culprit, yet the only testimony in this record tends to establish that if a hazardous amount of Sparine were injected into a patient outside the blood vessel the reaction would be immediate causing a severe burning described by some as a pain. Plaintiff in her testimony made no mention of receiving the additive Sparine. She testified as to seeing the defendant Cannon at approximately 6:30 when he inserted the needle for the intravenous feeding and that her husband and sister stayed at the hospital until after visiting hours. That after the visiting hours the lights were turned off. She then testified that after the lights were turned off her arm was paining terribly. She did not know how long after the lights were turned off that she experienced the pain, nor did she note the time. From her testimony it is impossible to ascertain if the pain she experienced was the result of the Sparine additive or some other cause.

From the foregoing it can be seen that plaintiff has failed to sustain her burden of proof in establishing negligence on the part of the defendant Cannon or the defendant hospital in the manner required by law in cases of this kind. Subparagraph f. charges the hospital with negligence in its failure to properly administer over the plaintiff after the intravenous injections had commenced. In short, that defendant Proctor Hospital, being fully aware of possible extravasation, failed to adequately care for the plaintiff.

■■ The record clearly indicates that the procedure followed by the

hospital and Dr. Cannon was no different than the procedure usually followed under these circumstances. If we consider the charge to be adequate then it must be inferred from the evidence presented that both the doctor and the hospital were fully aware of the possibility of extravasation and that plaintiff might sustain the injury she in fact sustained.

In *Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253, the court had this to say:

"* * * [I]n negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. (Prosser on Torts, 3rd ed., at 331). 'By the great weight of modern American authority a custom either to take or to omit a precaution is generally admissible as bearing on what is proper conduct under the circumstances, but it is not conclusive.' (2 Harper & James, The Law of Torts, sec. 17.3, at 977-978). Custom is relevant in determining the standard of care because it illustrates what is feasible, it suggests a body of knowledge of which the defendant should be aware, and it warns of the possibility of farreaching consequences if a higher standard is required. (Morris, Custom and Negligence, 42 Colum. L. Rev., 1147 (1942); 2 Wigmore, Evidence, 3rd ed., secs. 459, 461.) But custom should never be conclusive. As Judge Learned Hand said, There are, no doubt, cases where courts seem to make the general practice of the calling the standard of proper diligence; we have indeed given some currency to the notion ourselves. * * * Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however, persuasive be its useages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission.' The T. J. Hooper (2d cir. 1932), 60 F.2d 737, 740."

The court then went on to say:

"In the present case the regulations, standards, and bylaws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did."

■■ There is insufficient evidence in this record to establish that the incident of extravasation in intravenous feeding cases makes necessary

the high degree of care plaintiff requests this court to impose upon the defendant Proctor Hospital. We do not think the *Darling* case lessened the requirement that plaintiff prove the standard of conduct allegedly violated by defendant Proctor Hospital. Plaintiff contends that had defendant Proctor Hospital removed the needle in time she would not have been injured. This we assume is true, but the record does not permit the inference that Proctor Hospital should have or did in fact know when that time had arrived. From this record we can only surmise that extravasation causing injury in cases of this sort is completely unpredictable. We cannot from this record ascertain if plaintiff's injury occurred instantaneously or if the process was slow. In short, when plaintiff experienced pain, was the damage already done, or could she have been spared the injury, totally or in part, if the needle had been extracted at the moment of pain.

■■ Counts VII and VIII of the complaint do little more than repeat the allegations of Counts I and II as initially filed, joining, however, both parties in each count on the basis that the parties were embarked on a joint venture. What has been stated in this opinion relating to Counts III and IV applies with equal force to Counts VII and VIII. These counts appear to be predicated upon a *res ipsa loquitur* doctrine and indeed this is plaintiff's contention. Taking plaintiff at her word we must therefore conclude that plaintiff failed to state a cause of action in Counts VII and VIII and most certainly failed to sustain the burden of proof required in cases of this nature.

The only remaining matter to be decided is whether or not the court erred in its failure to take judicial notice of certain statutes and regulations. Freda Haley, a nursing supervisor at the defendant hospital, was called by plaintiff as a witness under Section 60 of the Practice Act. During the examination counsel for plaintiff asked if she knew if the defendant Proctor Hospital received a Hill-Burton grant at the time of the construction of the new hospital. An objection to that question was sustained by the lower court. Plaintiff contends that a foundation was being laid by said question and if the hospital did in fact receive such grant that the court would then be required to take judicial notice of Title 42, U.S.C.A., Public Health & Welfare, Chap. 42, Sec. 291(d), subsection 7. She contends that the act provided minimum standards for the maintenance and operation of facilities providing in-patient care. Counsel for plaintiff also requested the court to take judicial notice of the Hospital Licensing Act of the State of Illinois and the regulations of the Department of Public Health of the State of Illinois, specifically sections 4—2, section (b), Nursing Personnel, and section 4—141. Plaintiff

contends that these were improperly omitted, citing *Darling v. Charleston Community Hospital, supra,* and contends the trial judge ruled on this exclusion under the so-called expert medical testimony rule.

Plaintiff's argument on this point is scant and she does not set out, in either the abstract or brief, that portion of the U.S.C.A. or the Regulations of the Department of Public Health relied upon. She argues only that the code and regulations would have established the standard of care required of the defendant hospital, citing *Darling v. Charleston Community Hospital,* 33 Ill.2d 236, 211 N.E.2d 253. The Supreme Court there said:

"In the present case the regulations, standards, and bylaws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did."

■■ It is noted that the pleadings in that case (see *Darling v. Charleston Community Memorial Hospital,* 50 Ill.App.2d 253, 200 N.E.2d 149) contained sufficient ultimate facts to permit the introduction of such evidence. (*Rosin v. Central Plaza Hotel,* 245 Ill.App.411, 103 N.E.2d 381.) In this case, plaintiff's complaint cannot be said to contain sufficient facts from which it could clearly be ascertained that the U.S. Code or the Regulations of the Department of Health were involved. *Chase v. Schultz,* 348 Ill.App. 595, 109 N.E.2d 636.

For the reasons stated herein the judgment of the lower court is affirmed.

Judgment affirmed.

ALLOY, J., concurs.

Mr. PRESIDING JUSTICE STOUDER dissenting:

I do not agree with the majority of the court. My disagreement is limited to the majority's affirmation of the trial court's dismissal of Count 8.

Because the facts set forth in the majority opinion are fairly adequate, the only additional facts which I shall recite are those necessary to my conclusions.

The issue in this case is when the evidence is considered in its most favorable aspect to the plaintiff was there a total failure to prove any necessary element of her case? The evidence may not be weighed, and all contradictory evidence must be rejected. (*Graham v. St. Luke's Hospital,* 40 Ill.App.2d 147, 196 N.E.2d 355 and *Pedrick V Peoria & E. RR.*

*Co.,* 37 Ill.2d 494, 229 N.E.2d 504.) I believe my colleagues have not consistently applied the foregoing rule. Inferences favorable to plaintiff's claims have been ignored and disputed inferences have been resolved in favor of the defendants.

In paragraphs 6 and 7 of Count 8 the plaintiff alleged specific acts of negligence against the defendant Proctor Community Hospital. Paragraph 6 of Count 8 alleges that both defendants knew of the potential complications if the I.V. solutions together with additives were to infiltrate into the perivascular tissue of the plaintiff's right arm. Paragraph 7 alleges that defendants failed to properly supervise the I.V. feeding and the plaintiff's complaints of severe pain and swelling were not heeded by either of the defendants.

The plaintiff testified that, on the night in question shortly after the lights were turned out, she began suffering terrible pain in her right arm. A call for help by turning on a light was answered by a nurse's aide. The aide informed her that she would see what she could do, left and never returned. The plaintiff was not attended to until 1 A.M. Although the plaintiff did not note the time it seems likely that she laid in pain for quite a while.

Frieda Haley, a nursing supervisor at the defendant hospital, testified that it was the nurses duty to answer the patient's lights. She further stated that it is the duty of the nurse to make periodic checks during an I.V. injection and observe the area where the needle is going in to see that the fluid is running. "If a patient complains of pain at the injection site, the I.V. feeding should be discontinued immediately". Defendant Cannon testified that he was aware of the occurrence of extravasation during I.V. feedings and stated that the I.V. should be immediately terminated subsequent to a complaint of pain. The pain could have been caused by the additive Sparine seeping through the wall of the veins or outside the blood vessels due to a breakdown in their walls. Two other doctors corroborated this testimony.

The testimony clearly shows that both defendants knew of the potential complications of administering I.V. solutions with additives and certainly a jury could conclude a lack of proper supervision from the plaintiff's testimony.

In paragraphs 6 and 7 of Count 8 the plaintiff alleged specific acts of negligence against the defendant, Dr. Cannon. I believe that the plaintiff presented enough evidence in her case in chief in support of the allegations to justify a jury to return a verdict in her behalf.

Defendant Cannon testified that his familiarity with the additive Sparine and its side effects was basically limited to the cautionary instructions accompaning the bottle: "Care should be exercised during

94

intravenous administration not to allow perivascular extravastion since under the circumstances chemical irritation may be severe." In spite of the fact that he was aware that extravasation has occurred during intravenous feedings, he did not advise anyone of the cautionary instructions when he gave the order to inject Sparine into the plaintiff's arm. The requirements for expert testimony were fulfilled when the defendant Cannon testified to the instructions. The requirement for expert evidence is not limited to oral testimony. The cautionary instructions certainly should have alerted the defendant Cannon to the risks involved and the precautions to take. Dr. Palmer corroborated the importance of the instructions by testifying that he usually gives instructions to watch a patient more closely when additives are present in the I.V. solution.

Dr. Cannon stated that the pain suffered by the plaintiff could have been caused by the additive Sparine seeping through the walls of the veins or outside the blood vessels due to a breakdown in their walls. Dr. Palmer testified that Sparine might cause a breakdown in the blood vessel wall and cause the vessel to leak into the surrounding tissue. The testimony of the two doctors concerning leakage is *prima facie* evidence that the plaintiff's injury was caused by the Sparine.

Dr. Swearinger, a physician who treated the plaintiff subsequent to her injury, testified that it was his opinion "that the medicine that was in the bottle infiltrated into the tissue surrounding the vein either by the needle not being in the vein or medication infiltrated through the wall of the vein."

Based on the testimony and other evidence presented by plaintiff in support of Count 8 the trial court erred in directing a verdict in favor of defendants in Count 8.