James L. Jirik, Plaintiff-Appellee, v. General Mills, Inc., Defendant-Appellant.

Gen. No. 52,274.

First District, Second Division.

June 17, 1969.

111

King, Robin, Gale & Pillinger, of Chicago (Willard L. King, J. William Braithwaite, and Leroy J. Tornquist, of counsel), for appellant.

Hanley & Land, of Lansing (James E. Land, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Plaintiff, James Jirik, brought suit against General Mills, Inc. and Screw Conveyor Corporation for property damages to his truck and trailer. Trial was without a jury. At the close of plaintiff's case, the court granted defendant Screw Conveyor's motion for a directed verdict. The propriety of that action is not questioned in this appeal. At the close of all the evidence, the court entered judgment against General Mills for $7,320.82. General Mills appeals from that judgment contending: (1) there was no evidence of specific negligence on the part of defendant; (2) the doctrine of res ipsa loquitur is inapplicable in the instant case; (3) the trial court erred in allowing plaintiff to amend his complaint by adding a count

based upon res ipsa loquitur at the conclusion of plaintiff's case; and (4) defendant met his burden under res ipsa by showing that the damages were caused by plaintiff's negligence. It is not claimed that the damages awarded are excessive.

On January 15, 1964, a semi-tractor truck and trailer unit owned by plaintiff, was damaged extensively at the General Mills Rialto grain elevator. Before the accident, the unit, which he had purchased new in 1960, was in excellent condition. It had travelled 275,000 miles. On January 7, 1964, plaintiff left the truck terminal in Hammond, Indiana to transport a load of steel to Wichita, Kansas. Prior to departure, the unit was inspected and found to be in satisfactory condition by an Interstate Commerce Commission inspector. On his return trip from Kansas, plaintiff was hauling defendant's grain to its elevator. During the trip he checked the vehicle five times. He was a mechanic, had occasion to repair trucks, and did the maintenance work on his own unit. He was familiar with the pins or bolts which secure the rear springs of the truck. Plaintiff testified that these bolts were all present. He arrived at defendant's elevator about 11:30 a. m. with a passenger, Donald Butler. About 1:00 p. m. he was instructed to back his truck onto defendant's lift which had been manufactured and installed by the Screw Conveyor Corporation. He then got out of the truck as per regulations.

The lift, operated by a General Mills employee, is essentially a movable platform. After the truck is backed onto the platform, wheel stops are placed behind the rear wheels. The lift then raises the front of the truck to an angle of 30 to 35 degrees. By force of gravity the grain is then emptied from the rear of the trailer into a grain bin.

Plaintiff's truck had been unloaded in such manner about 75 times. However plaintiff and his passenger testified that the procedure employed this time was dif-

114

ferent from what they had observed previously. Ordinarily, the truck was raised in stages so as to allow a gradual flow of the grain. But on this occasion the truck was elevated in one continuous movement, so that the grain did not flow properly, but rather rushed to the rear of the trailer and came out from the top and the sides. The truck dumper was also raised to its maximum elevation, rather than the usual procedure of only partially elevating the mechanism. They also testified that the accident occurred after the truck was empty, and the lift had started to descend. The operator activated the lever to lower the lift, but it seemed to jerk or bounce as if it did not catch properly. The lift was lowered quickly for a few feet, then came to an abrupt halt, and the truck fell off backwards. The whole back end of the trailer started rolling towards the plaintiff, and the unit was damaged extensively. Subsquent to the occurrence, plaintiff made grain deliveries to defendant's elevator, and the lift was raised and lowered in gradual stages.

The plant superintendent of defendant's elevator, called as an adverse witness under Section 60 of the Civil Practice Act, testified that the mechanism had been in use since 1962. No vehicle had ever been turned back because of improper mechanical condition, the assumption being that if a vehicle is capable of coming in with a load of grain it is capable of being unloaded. The lift was maintained by a crew employed by defendant. A manual furnished by the manufacturer warned that an accumulation of water, dirt and other material could be detrimental to the operation of the mechanism. Water in the hydraulic oil could cause excessive corrosion, in turn causing vibration and wear. At the time of the accident, 1,600 trucks had been unloaded; at the time of trial, 7,500 trucks had been unloaded at this elevator. No other accidents ever occurred in connection with the operation of this mechanism.

The court then granted plaintiff's motion to amend his complaint by adding a count based upon res ipsa loquitur. The plaintiff rested, and the defense presented its witnesses.

Donald Schaetzel, an engineer employed by defendant, investigated the accident in question. On January 23, 1964, he examined the vehicle and had photographs taken under his direction. He testified that the accident was caused, as shown in the photographs, because parts were missing in the rear wheel assembly of the truck. Seven of the eight necessary bolts in the assembly were missing. Corrosion in this assembly indicated that the parts had been missing for a period of time. If the missing bolts were in place, a jerky or jumpy motion would have had no effect on the trailer unit. Another witness testified as an expert that the absence of the bolts retaining the springs in the rear housing assembly would be the direct cause of the accident. Two employees of Screw Conveyor and defendant's plant superintendent testified that after the accident they inspected the trailer unit and found bolts missing from the assembly.

The operator of the lift testified that he had raised the elevator in gradual stages as he had been taught. The lift was not raised to its maximum elevation, and the mechanism was not being lowered at the time of the accident. After the truck was emptied of grain, he helped plaintiff fold a canvas. As he was walking back to the controls he heard a noise, saw the truck coming down and ran.

We will first consider General Mill's contention that the doctrine of res ipsa loquitur is not applicable in this case.

To apply the doctrine of res ipsa loquitur, plaintiff must establish that the injury was caused by an agent or instrumentality within the control or management of the defendant, that plaintiff was free from contributory negligence, and that the result is one normally not occurring without negligence in the control or management

of the agency or instrumentality. Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520 (1959).

In Metz v. Central Illinois Electric & Gas Co., 32 Ill2d 446, 207 NE2d 305 (1965), our Supreme Court stated at p 449:

> "Whether the doctrine [of res ipsa] applies in a given case is a question of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and determine whether the circumstantial evidence of negligence has been overcome. . . ."

■ Therefore if res ipsa applies, the trial court's determination of fact may be disturbed by a reviewing court only if that determination is contrary to the manifest weight of the evidence. Smith v. Illinois Power and Light Corp., 297 Ill App 358, 17 NE2d 632 (1938).

■ ■ The mere happening of an accident will not support an inference of negligence. Finfer v. Turck, 347 Ill App 72, 105 NE2d 785 (1952). The doctrine of res ipsa should only be applied if the circumstantial evidence justifies an inference of negligence. Edmonds v. Heil, 333 Ill App 497, 77 NE2d 863 (1948).

Defendant contends that the doctrine should not be applied because plaintiff did not show that the lift caused the accident, arguing that at the conclusion of plaintiff's case there were three equally possible explanations of the damage to the truck: (1) negligent installation or manufacture of the lift; (2) negligent maintenance or the defective condition of the truck itself; and (3) negligent maintenance or operation of the lift.

■ ■ We agree with the proposition that plaintiff must establish causation before he may recover, regardless of what theory he is advancing; and that the doctrine of res ipsa loquitur ". . . does not dispense with the requirement that the act or omission . . . be established

117

as the proximate cause . . ." of the accident. Bish v. Employer's Liability Assur. Corp., 236 F2d 62, 67 (5th Cir 1956). As stated in Prosser, Law of Torts (3d Ed 1964),

"[a] cause is a necessary antecedent: in a very real and practical sense, the term embraces all things which have so far contributed to the result that without them it would not have occurred." P 241.

■ However, plaintiff need not disprove all possible explanations of the accident. In May v. Columbian Rope Co., 40 Ill App2d 264, 189 NE2d 394 (1963), plaintiff was injured when a rope holding a scaffold broke. He sued the manufacturer of the rope on the theory of res ipsa. The court stated at page 273:

"Defendant asserts that plaintiff has not disproved the possibility that the rope was weakened by a mistaken cut while being shortened into usable lengths. However, there is no evidence to suggest that this happened. Moreover, plaintiff is not required to disprove every alternative hypothesis suggesting a cause other than negligence in order to recover."

■ We believe that the plaintiff presented sufficient evidence to establish that the cause of the accident was the negligent maintenance or operation of the lift. As to defendant's contentions that there were three equally possible explanations of the accident, it must be noted that the lift had been engaged in more than 9,000 operations prior to trial, and for a period of a few years. This occurrence constituted the only accident. Thus any possibility of negligence in the manufacture or installation of the mechanism would seem remote.

As to the contention that negligent maintenance of the truck was equally possible, the plaintiff testified that he was a mechanic, that he took good care of the unit, and that prior to the accident, the unit was in excellent condi-

tion. He also testified that the unit had been inspected by a Commerce Commission inspector, that he inspected the truck frequently, and that no bolts were missing. At the conclusion of plaintiff's case, the most plausible explanation of the accident causation was the negligent maintenance or operation of the lift.

All of the evidence indicated that at the time of the accident, the truck was on the lift, that the lift was in operation and at an angle, and that the operation was within the control of defendant. Under any definition of causation, the lift would have to be an actual cause of the accident. In view of the testimony of the plaintiff and his passenger, we believe that the trial court was justified in finding that the operation of the lift proximately caused the accident, and in invoking the res ipsa doctrine.

■ Defendant next contends that, assuming res ipsa applies, it fully met its burden under the doctrine, and that the trial court erred in not entering judgment in its favor. The necessary implication of this argument is that once defendant introduced evidence that the accident was caused by bolts missing in the rear assembly of the truck, the inference of negligence disappears. However, in Metz v. Central Illinois Electric & Gas Co., 32 Ill2d 446, 207 NE 305 (1965) the court stated at page 449:

> "Like any other proof it may be explained or rebutted by the opposing party. And while there appears to be conflict in Illinois decisions as to whether the presumption or inference of negligence raised by the doctrine of res ipsa loquitur vanishes entirely when any evidence appears to the contrary, the more recent, the more studied, and the more just view is that the inference, or presumption, does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case and must be weighed by the jury against the direct evidence offered by the party charged."

119

Thus the trial court as trier of fact could properly consider the inference of negligence created by res ipsa along with all of the evidence in the case. The defense was predicated entirely on its evidence that certain bolts were missing. The evidence came from an expert witness and from defendant's employee. The latter testified that his examination of the truck a few days after the accident indicated to him that the bolts were missing for a period of time. As the trial judge pointed out in entering judgment for the plaintiff, he found that defendant had offered no testimony, expert or otherwise, as to how long the bolts had been missing. Moreover the trial court found that it was unlikely that a truck with such bolts missing could have transported a load of steel to Kansas and return with a full load of grain without incident. Additionally it should be noted, defendant's own plant superintendent testified that defendant assumed that if a truck were capable of driving on the lift, it could be unloaded without inspection. The plaintiff testified that the unit was in good condition, and that no bolts were missing at his last inspection. The trial court did not err in finding the issues for the plaintiff.

Defendant finally contends that the judgment should be reversed and the cause remanded for a new trial because trial court erred in granting plaintiff's motion to add a count based upon res ipsa loquitur at the conclusion of his case.

The Civil Practice Act (Ill Rev Stats 1967, c 110, § 46) provides:

> "At any time before final judgment amendments may be allowed on just and reasonable terms, . . . changing the cause of action or defense or adding new causes of action or defenses, . . . . § 46(1).

> "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." § 46(3).

120

■■■ Defendant argues that fundamental fairness requires that it be advised by plaintiff before trial that he intended to rely on the doctrine of res ipsa. However in this bench trial, defendant offered no objection to the amended pleading, nor did it request any continuance. And in fact, the defense presented was an attempt to rebut the application of the doctrine. We do not see how defendant was prejudiced by the amendment, and find that the trial court did not err in allowing the plaintiff to add the res ipsa count at the conclusion of his case.

Defendant concedes that res ipsa may be pleaded along with a count of specific negligence. See Erckman v. Northern Illinois Gas Co., 61 Ill App2d 137, 210 NE2d 42 (1965). Since we have found that the doctrine of res ipsa applies in the instant case, it is not necessary to consider whether plaintiff proved specific acts of negligence.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS, P. J. and BURKE, J., concur.