JUDITH MARIE SPIDLE *et al.*, Plaintiffs-Appellants, *v.* LEE A. STEWARD, M.D., Defendant-Appellee.—(ANTON DIPPOLD, M.D., *et al.*, Defendants.)

Fourth District   No. 14804

Opinion filed January 30, 1979.

CRAVEN, J., dissenting.

Marshall A. Susler and Robert D. Owen, both of Owen, Roberts, Susler & Murphy, of Decatur, for appellants.

William A. Sunderman, of Anderson Law Office, of Charleston, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiffs, Judith Marie Spidle and Ada Spidle, wife and husband, sued defendant, Lee A. Steward, M.D. in the circuit court of Coles County alleging malpractice. The plaintiff wife had been a patient of defendant's and sought damages for personal injuries allegedly resulting from improper treatment. Plaintiff husband sought damages for medical bills arising from those injuries and for which he had become liable and damages for loss of his wife's consortium. The complaint as amended set forth a basis of proof upon the theories of specific negligence and *res ipsa loquitur*. At jury trial, the court directed a verdict in favor of defendant as to the *res ipsa* charges and the jury found for the defendant upon the allegations of specific negligence. Plaintiffs appeal the judgment subsequently entered for the defendant.

Plaintiffs maintain that the trial court erred in directing the verdict and in refusing their tendered instruction defining the doctor's duty and explaining the extent to which expert testimony was necessary in order for them to prove their case.

The evidence showed that between November of 1971 and August of 1972, defendant had been treating Mrs. Spidle by medication for several severe attacks of pelvic inflammatory disease. Because of the recurrence of these attacks, he concluded that surgery was necessary and on August 11, 1972, performed a supracervical hysterectomy upon her. After the surgery she started having fecal discharges from her vagina which were diagnosed as having resulted from a fistula or opening that developed between her vagina and colon. The discharges continued until corrective surgery by another doctor and she has continued to have considerable difficulty. Substantive evidence was introduced that the fistula proximately resulted from the surgery.

██ If the evidence in a negligence case establishes a sufficient foundation to invoke the doctrine of *res ipsa loquitur*, the burden shifts to the defendant to prove that he was not guilty of negligence which was a proximate cause of the injury in issue. The parties agree that a foundation for *res ipsa loquitur* could be established in this case only upon a showing that,

> 1. The instrumentality involved, here the operation, was under the control of the surgeon;
> 2. The result obtained was one which would not ordinarily have occurred if the surgeon used proper care; and
> 3. The injury was not a result of the negligence of the injured plaintiff.

See *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259.

Recently, in *Walker v. Rumer* (1978), 72 Ill. 2d 495, 381 N.E.2d 689, the supreme court affirmed our decision (51 Ill. App. 3d 1005, 367 N.E.2d 158) ruling that the complaint stated a cause of action for medical malpractice susceptible to proof under the doctrine of *res ipsa loquitur*. The supreme court described the essence of *res ipsa* in such cases in these words, "in determining whether the doctrine is applicable the circuit court is required to decide as a matter of law whether 'the occurrence is such as in the ordinary course of things would not have happened' if the party exercising control or management had exercised proper care." 72 Ill. 2d 495, 502, 381 N.E.2d 689, 691.

No question is raised that the operation was not under the control of the surgeon. At that time the plaintiff wife was under anesthesia and not shown to have been negligent in any respect. However, the only proof made by plaintiffs that the fistula would not have occurred as a result of

the surgery if the defendant "had exercised proper care" was the testimony of its expert witness Dr. Thomas Wilson, a specialist in gynecology. After Dr. Wilson had discussed the factors a doctor should consider in deciding whether to operate upon a woman who has had several acute attacks of pelvic inflammatory disease or whether to continue treatment by medicine, the following colloquy took place:

"Q. Is a hysterectomy, supracervical hysterectomy, removal of the tubes and ovaries, a type of surgery which in ordinary course, is likely to lead and have as one of its results, now, in the ordinary course, mind you, in the ordinary course, likely to lead to and have as one of its results, in the absence of any negligence, the formation of fecal vaginal fistulas?

A. This is a rare and unusual complication of hysterectomies.

Q. It is not one one would normally expect, is it?

A. No."

Plaintiffs maintain that the doctor's answer to the first of the quoted questions was an affirmative answer to the whole question. However, he stated specifically that the result was a rare and unusual complication. He did not state that the result was unlikely in the absence of negligence. His answer to part of the question cannot be taken as an answer to the whole question. The examiner's second question is phrased in such a way as to refer to the witness' answer rather than the original question. No case has been called to our attention invoking the doctrine of *res ipsa* against a surgeon merely because he performed an operation upon a nonnegligent patient and got an unusual result. (See general discussion of *res ipsa loquitur*, Prosser, Torts §39 (4th ed. 1971).) The express language of *Walker* makes clear that such is not the rule. The trial court properly removed this method of proof from the case by its directed verdict.

Plaintiffs' tendered instruction No. 7 was a modification of IPI Civil No. 105.01 (2d ed. 1971) and stated:

"In treating and operating upon a patient, a doctor must possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified doctors in the locality in which he practices or in similar localities in similar cases and circumstances. A failure to do so is a form of negligence that is called malpractice.

The only way you may decide the standard of care that is required in the circumstances is by a doctor called as an expert witness. You must not attempt to determine this standard from any personal knowledge you may have."

The tendered instruction differs from IPI Civil No. 105.01 (2d ed. 1971) in that the second paragraph of No. 105.01 states,

"The only way in which you may decide whether the defendant

possessed and applied the knowledge and used the skill and care which the law required of him is from evidence presented in this trial by [doctors] [dentists] called as expert witnesses. You must not attempt to determine this question from any personal knowledge you have."

The instructions differ in that No. 105.01 in effect limits the proof of both the standard of care required of the defendant and whether that standard was applied to expert testimony while the tendered instruction limits only the proof of the standard required to expert testimony.

■ The trial court deemed it appropriate to follow IPI, refused the instruction tendered by plaintiffs and stated that it would give IPI Civil No. 105.01. Plaintiffs objected further to No. 105.01 in that it spoke of a requirement for the testimony of "doctors" when the testimony of only a single doctor would be sufficient. The court indicated that it agreed and would give IPI Civil No. 105.01 with the reference to "doctors" being in the singular. However, no instruction in that form was tendered or given. IPI Civil No. 105.01 in the form drawn by defendant was given.

Supreme Court Rule 239(a) (58 Ill. 2d R. 239(a)) directs that when an IPI instruction is available upon a subject, the trial court should use that instruction "unless the court determines that it does not accurately state the law." Although as defendant correctly points out, IPI Civil No. 105.01 has undoubtedly been used many times since its enactment, no case has been called to our attention ruling upon the propriety of giving the second paragraph of the instruction. The Comment to the instruction (IPI Civil No. 105.01, Comment, at 321) cites *Bollenbach v. Bloomenthal* (1930), 341 Ill. 539, 173 N.E. 670, as the only supreme court authority in its support. There, the court reversed a malpractice award because the trial court had instructed the jury on a *res ipsa loquitur* theory even though the defendant doctor had put on some evidence of his exercise of care. The court deemed the *res ipsa* presumption to vanish in the face of the defendant's evidence. The court referred with approval to cases from other jurisdictions which required the use of expert testimony to prove specific negligence.

The theory of plaintiffs' instruction begins with *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301. There, the supreme court ruled that the evidence was sufficient to support a recovery in a medical malpractice case but remanded the case for a new trial because of the argumentative and otherwise improper nature of instructions given on the plaintiff's behalf. In discussing the sufficiency of the evidence, the court stated,

"Except in certain limited situations not pertinent here, the appellate decisions of this State have held that the plaintiff, by the use of expert testimony, must establish the standards of care

against which the defendant doctor's conduct is measured. The plaintiff must then further prove by affirmative evidence that, judged in light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff. See *Scardina v. Colletti*, 63 Ill. App. 2d 481; *Newman v. Spellberg*, 91 Ill. App. 2d 310; *Sanders v. Frost*, 112 Ill. App. 2d 234; *Estell v. Barringer*, 3 Ill. App. 3d 455; *Ybarra v. Cross*, 22 Ill. App. 3d 638." 60 Ill. 2d 418, 423, 328 N.E.2d 301, 304-05.

In *Borowski* expert testimony was presented both as to the standard required of the defendant doctor and as to whether his performance had met that standard. The propriety of IPI Civil No. 105.01 was not discussed in the opinion. None of the appellate cases cited in the quote discuss the aspect of the quoted portion of the opinion which indicated that expert testimony is not required to show whether a doctor's performance conformed to the proper standard. *Estell* dealt mostly with the doctrine of *res ipsa loquitur* and spoke of the sufficiency of the evidence on specific negligence only to say that it was insufficient. In all of the other opinions, their reference to expert testimony stated that it was necessary in those cases to show that the various plaintiffs were injured and that the injury would not have occurred in the absence of negligence.

In *Casey v. Penn* (1977), 45 Ill. App. 3d 573, 360 N.E.2d 93, suit was brought against a surgeon for negligent treatment resulting in amputation of the arm. The appellate court reversed the trial court's judgment on the verdict for the defendant surgeon and remanded for a new trial holding the verdict to be contrary to the manifest weight of the evidence. In defendant's petition for rehearing, he argued that no expert opinion was presented that his negligent treatment was a proximate cause of the loss of the arm. In a supplemental opinion upon denial of rehearing (45 Ill. App. 3d 1068, 1069, 362 N.E.2d 1373, 1375), the court referred to the quotation from *Borowski* and then stated:

"We specifically note that the defendant has not contended that the plaintiff failed to establish by expert testimony the standards of care against which the defendant doctor's conduct was to be measured. We hold that the above-quoted language from *Borowski* requires plaintiff in this action for negligent post-operative treatment of plaintiff's arm *to prove by affirmative evidence, not necessarily expert opinion testimony, that defendant's negligent treatment was a proximate cause of plaintiff's injury.*" (Emphasis added.)

The supplemental opinion then went on to state that the testimony of the defendant surgeon was affirmative expert testimony that his negligent post-operative treatment was a proximate cause of the loss of the arm. Thus the opinion's reference to the dictum of *Borowski*, although stated in

terms of a holding, was dictum. Furthermore, the reference to the need for expert testimony dealt with the question of proximate cause. Here the question concerns the need for expert testimony as to whether the doctor performed according to the required standard.

The *Borowski* quote was also cited in *Burrow v. Widder* (1977), 52 Ill. App. 3d 1017, 1027, 368 N.E.2d 443, 450, where the court set aside a medical malpractice award stating that the evidence did not establish that the doctor "deviated from an accepted medical standard in proceeding to surgery" and that there was no "testimony that the decision to proceed with surgery was not in accordance with good medical practice." Any approval of the *Borowski* dictum in *Burrow* was itself dictum.

In *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320, the court approved the use of IPI Civil No. 105.01 with an added statement not relevant here and stated the instruction to be a proper pronouncement of the law. The question of the propriety of the second paragraph of the instruction was not raised.

The supreme court has quoted the dictum of *Borowski* recently in *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279, in affirming the trial court's direction of a verdict for the defendants in a medical malpractice case arising from thyroid surgery. The supreme court agreed with the trial and appellate courts that the expert evidence of the standard required of the defendants was insufficient. Plaintiff's expert testified that in his own opinion, the procedure used by defendants was not proper but did not testify as to the standard accepted by the profession. The court stated:

> "As this court recognized in *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423, the appellate decisions in this State have held that the plaintiff in a medical malpractice action generally must establish the standard of care through expert testimony. The plaintiff must then prove that, judged in the light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423; see IPI Civil No. 105.01.
>
> Generally, expert testimony is needed to support a charge of malpractice because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician. (See IPI Civil No. 105.01, Comment at 321; *Baoust v. Kraut* (Del. 1977), 377 A.2d 4, 6-7; J. Dooley, Modern Tort Law sec. 34.31, at 517 (1977).) However, in those situations where the physician's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it, the appellate decisions indicate that no expert testimony is necessary.

[Citations.] A requirement that the standard of care be established through expert testimony except where the common knowledge of laymen is sufficient to recognize or infer negligence is broadly recognized throughout the country. [Citations.]" 72 Ill. 2d 249, 256-57, 381 N.E.2d 279, 282.

Although the foregoing is also dictum, it indicates that the dictum of *Borowski* and IPI Civil No. 105.01 are consistent and that the supreme court does not intend to reject IPI Civil No. 105.01. Considering the supreme court's original approval of the instruction and the absence of a direct ruling to the contrary, we conclude that the trial court ruled properly on the instructions.

For the reasons stated, we affirm.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I am not in agreement that the trial court was correct in directing the verdict against the plaintiffs on those counts relying on the doctrine of *res ipsa loquitur*. The opinion holds that Dr. Wilson's testimony was insufficient to allow this case to go to the jury. It is true that he did not state, using any magic words, that the result obtained had to be predicated upon negligence, nor is he required to. The plaintiff need not conclusively establish negligence or causation-in-fact to invoke the doctrine. Such proof would obviate the purposes and policy behind shifting the burden of coming forward with the evidence to the defendant.

The plaintiff need only prove that the occurrence is such as in the ordinary course of things would not have happened if the party exercising control had used proper care. In this case the plaintiffs did establish that the result obtained here was a rare and unusual complication of a hysterectomy, that the result obtained was not one to be normally expected. Under the oft-quoted standard of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, a verdict based upon that testimony could stand and the trial court was in error in directing a verdict.

When a surgeon operates on a patient and a result is obtained that is unusual, unexpected, or one that is a rare and unusual complication of the surgical procedure, it may well be that the undesired result is not the result of negligence or of any want of professional competence. It may be that it is. In any event, in such circumstances, it is the surgeon, not the patient, who has the knowledge and the resources available to establish and explain the rare and unusual results. Under the familiar aspects of *res*

*ipsa loquitur,* the posture of this case was and should be that the surgeon had the burden of going forward with the evidence.

I would reverse the judgment of the trial court and remand for a new trial on those counts relying on the doctrine of *res ipsa loquitur.*