(No. 51828.—

JUDITH MARIE SPIDLE *et al.*, Appellants, v. LEE A. STEWARD *et al.* (Lee A. Steward, Appellee).

*Opinion filed Feb. 22, 1980.—Rehearing denied Mar. 28, 1980.*

4

RYAN and UNDERWOOD, JJ., concurring in part and dissenting in part.

Robert D. Owen, Marshall A. Susler and Linda M. Castleman, of Owen, Roberts, Susler & Murphy, of Decatur, for appellants.

William A. Sunderman, of Charleston, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This case concerns the quantum and quality of evidentiary proof necessary to maintain medical malpractice actions based on *res ipsa loquitur* and negligence. In 1972, plaintiff Judith Marie Spidle underwent a supra-cervical hysterectomy after recurrent attacks of pelvic inflammatory disease. Dr. Lee A. Steward had treated Mrs. Spidle during these attacks and was her surgeon during the operation. Following the operation, she developed vaginal fecal fistula and a drainage sinus at the lower part of the surgical incision, indicating a communication between the vagina, colon and abdominal wall. This caused fecal matter to drain from her incision and from her vagina.

Although the abdominal incision was closed relatively soon thereafter, the vaginal fecal fistula persisted for approximately two years before surgically corrected by another doctor. Mrs. Spidle, however, has continued to experience medical difficulties. There was evidence that Dr. Steward's initial surgery caused the fistula. *Spidle v. Steward* (1979), 68 Ill. App. 3d 134, 135.

Mrs. Spidle and her husband, Ada Spidle, timely filed a medical malpractice suit in Coles County against Dr. Steward, another doctor, and the hospital in which Mrs. Spidle was treated, asking damages for personal injuries, medical expenses for problems related to the surgery, and for Spidle's loss of consortium. The suits against the other doctor and the hospital were settled prior to jury deliberations. At the close of plaintiffs' case, the trial court directed a verdict for Dr. Steward (hereinafter referred to as defendant) on the two complaint counts based upon *res ipsa loquitur,* and, at the end of the trial, the court refused to give plaintiffs' modified version of Illinois Pattern Jury Instruction, Civil, No. 105.01 (2d ed. 1971). The jury found for the defendant on the two counts alleging negligence.

The Fourth District Appellate Court affirmed the trial court, one judge dissenting on the *res ipsa loquitur* issue. (68 Ill. App. 3d 134.) We granted leave to appeal. We reverse as to *res ipsa loquitur* and affirm as to the jury instruction.

The *res ipsa loquitur* doctrine is a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured "(1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control, and (3) under circumstances indicating that the injury was not due to any voluntary act or neglect on the part of the plaintiff ***." (3 J. Dooley, Modern

Tort Law sec. 48.02 (1977). See also W. Prosser, Torts sec. 39 (4th ed. 1971)). Illinois recognizes this doctrine (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446) and its applicability to medical malpractice actions (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *Walker v. Rumer* (1978), 72 Ill. 2d 495).

Before our opinion in *Walker,* there was a misconception that *res ipsa loquitur* only applied in medical malpractice actions when the medical activity at issue was within the common knowledge of laymen. (See, *e.g., Slater v. Missionary Sisters of the Sacred Heart,* (1974), 20 Ill. App. 3d 464; *Estell v. Barringer* (1972), 3 Ill. App. 3d 455.) The court recognized in *Walker,* however, that expert testimony could establish a negligence probability where jurors were unfamiliar with the issue. (72 Ill. 2d 495, 499-500.) Our opinion in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, noted that one purpose of *res ipsa loquitur* was to insure that relevant evidence was produced at trial. In addition, the doctrine is useful in combatting the reluctance of medical personnel to testify against one another. (*Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 241; Prosser, Torts sec. 39, at 227 (4th ed. 1971).) Doctors, for example, "may be more willing to testify that the injury was of a kind which would not ordinarily occur in the exercise of due care than they would be to specify those acts which constituted negligence." Note, *The Application of Res Ipsa Loquitur in Medical Malpractice Cases,* 60 Nw. U.L. Rev. 852, 865 (1966).

In accordance with the foregoing principles, we decided in *Walker* that *res ipsa loquitur* could be an appropriate theory of liability in medical malpractice cases. Since that issue was decided on the pleadings, we did not consider the quantity of evidence required to prove the elements of *res ipsa loquitur.* Nor did we discuss the

standard by which the trial court determines, as a matter of law, the amount of evidence necessary to present a *res ipsa loquitur* theory to the jury. These issues are presented now.

The trial court must in the first instance decide whether, as a matter of law, the *res ipsa loquitur* doctrine applies at all. (*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349.) It will not apply unless a duty of care is owed by the defendant to the plaintiff. (See, *e.g., Hunter v. Alfina* (1969), 112 Ill. App. 2d 432.) Assuming that a duty of care exists, and in this case the issue is beyond doubt, the trial court must also determine, as a matter of law, (1) whether plaintiff's pleaded facts would ever establish the three elements of control, lack of contributory negligence and the improbability of injury without negligence, and (2) whether those elements, as pleaded, gave sufficient notice to the defendant of the *res ipsa loquitur* cause of action. See, *e.g., Kruger v. Newkirk* (1976), 40 Ill. App. 3d 581.

On a motion for directed verdict, the role of the trial judge is to view all of the evidence in a light most favorable to the nonmovant and decide whether a verdict for the nonmovant could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) In *Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 421, for example, this court held the doctrine inapplicable as a matter of law because the evidence introduced by the plaintiff clearly established that the defendant did not have control over the instrumentality causing the injury. (See also *Krotke v. Chicago, Rock Island & Pacific R.R. Co.* (1974), 26 Ill. App. 3d 493, 501-02; *Wimberley v. Material Service Corp.* (1973), 12 Ill. App. 3d 1051; *Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910; 3 J. Dooley, Modern Tort Law sec. 48.21 (1977).) In the instant case, since the parties agree that Mrs. Spidle was injured while under control of the defendant

and was without contributory negligence, the only issue presented is whether the plaintiffs have introduced enough evidence that the injury would not have happened, ordinarily, without negligence.

Defendant contends that no evidence submitted by plaintiffs was sufficient to support this case going to the jury on the *res ipsa loquitur* counts. Plaintiffs' expert witness, Dr. Thomas Wilson, answered these questions about the probability of negligence:

> "Q. Is a hysterectomy, supracervical hysterectomy, removal of the tubes and ovaries, a type of surgery which in ordinary course, is likely to lead and have as one of its results, now, in the ordinary course, mind you, in the ordinary course, likely to lead to and have as one of its results, in the absence of any negligence, the formation of fecal vaginal fistulas?
> A. This is a rare and unusual complication of hysterectomies.
> Q. It is not one one would normally expect, is it?
> A. No."

Defendants argue that the doctor's answer only concerned unusual results, not unusual results ordinarily or most often due to negligence. As such, the defendant contends that, even in a light most favorable to plaintiffs, *res ipsa loquitur* cannot be invoked. While we agree with the defendant and the appellate court that surgeons are not liable merely for unusual, unfortunate results, we think that these answers, combined with other testimony, were sufficient under *Pedrick* to present a jury question regarding the probability of negligence.

Plaintiffs' counsel asked, in his first question, whether the fistula would, in the absence of negligence, ordinarily result. If the expert had answered that question "no," he would have established directly plaintiffs' initial burden with respect to the probability component of *res ipsa loquitur*. With such an answer, he would have testified, in effect, that supracervical hysterectomies resulting in

fistulas more probably than not have negligent antecedents. Such a direct answer, contrary to the conclusions of the appellate court in *Grubb v. Jurgens* (1978), 58 Ill. App. 3d 163, would be sufficient initially even though it would not have constituted proof that fistulas never happen without negligence. To hold otherwise, to require a plaintiff to conclusively prove negligence, would "obviate the purposes and policy behind shifting the burden of coming forward with the evidence to the defendant" (*Spidle v. Steward* (1979), 68 Ill. App. 3d 134, 140 (Craven, J., dissenting)), a policy this court endorsed in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298. Most courts have agreed with this view and have required plaintiff to show only that the result "ordinarily," not always, had negligent antecedents. *Walker v. Rumer* (1978), 72 Ill. 2d 495; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298; *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446; *People v. Morris* (1978), 60 Ill. App. 3d 1003; *Jirik v. General Mills, Inc.* (1969), 112 Ill. App. 2d 111; *Summers v. Northern Illinois Gas Co.* (1969), 117 Ill. App. 2d 125, 138; 2 Restatement (Second) of Torts sec. 328D and comments (1965).

Unfortunately, the expert in this case answered the question indirectly. We cannot conclude with equanimity, from this colloquy alone, whether he meant fistula formation after hysterectomies is usually a result of negligence or whether there is an equal probability that they occur despite the exercise of due care. In this case, however, the expert also testified about the inadvisability of operating on Mrs. Spidle if her pelvic inflammatory disease was in an acute or an acute flare-up stage. The defendant even agreed with the plaintiffs' expert regarding the inadvisability of operating during an acute stage, although denying that Mrs. Spidle was in such a stage. Evidence was introduced, however, that Mrs. Spidle was in an acute stage

and that the defendant, after the operation, admitted he "operated a little too soon." In a light most favorable to plaintiffs, a reasonable person could conclude that plaintiffs' expert believed that this fistula, more probably than not, resulted from defendant's negligence. If believed, this is evidence of more than a mere unusual occurrence (see *Hahn v. Illinois Office Equipment Co.* (1976), 42 Ill. App. 3d 29, 31), from which the jury could have inferred negligence under *res ipsa loquitur.*

To be sure, some of the foregoing evidence was controverted. Nevertheless, factual disputes presenting credibility questions or requiring evidence to be weighed should not be decided by the trial judge as a matter of law. As was stated in *Pedrick*: "Clearly, the constitution does, and judges should, carefully preserve the right of the parties to have a substantial factual dispute resolved by the jury, for it is here that assessment of the credibility of witnesses may well prove decisive." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 504; see also *Lovejoy v. National Food Stores, Inc.* (1973), 12 Ill. App. 3d 982; *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255; *Summers v. Northern Illinois Gas Co.* (1969), 117 Ill. App. 2d 125, 138; *Traylor v. The Fair* (1968), 101 Ill. App. 2d 268, 275.) This right was not preserved in the instant case.

*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, illustrates the preferred approach. There a steel ventilator-window sash fell from a building owned by defendants and struck the plaintiff. It was agreed that plaintiff was not contributorially negligent and that this type of accident would not ordinarily happen without negligence. But whether defendant exercised control over the window was disputed. The court examined the record as a whole and held "it was not error for the trial court to send the case to the jury on a *res ipsa* instruction, particularly where the jury was

expressly instructed that control on defendant's part was a prerequisite to its liability." (42 Ill. 2d 345, 351.) We see no reason to treat the probability component of *res ipsa loquitur* differently from the control component. Plaintiffs have the burden of proof on each element of *res ipsa loquitur.* And we think that from this record, read as a whole, a jury could have decided that each of these elements was proved. Therefore, the *res ipsa loquitur* negligence counts should have been submitted to the jury for a decision.

The Illinois civil pattern jury instruction on *res ipsa loquitur* states in pertinent part:

> "The plaintiff has the burden of proving each of the following propositions:
>
> [the requirements of injury, control, lack of contributory negligence and probability of injury]
>
> If you find that each of these propositions has been proved, the law permits you to infer from them that the defendant was negligent \*\*\*." IPI Civil No. 22.01 (2d ed. 1971).

With this instruction, we think the jury is fully capable of determining these issues in accordance with the law.

The California Supreme Court reached similar conclusions in *Clark v. Gibbons* (1967), 66 Cal. 2d 399, 412, 426 P.2d 525, 534, 58 Cal. Rptr. 125, 134. In that case, an expert testified to a low incidence of injuries when due care was used. Other evidence tended to establish specific acts of negligence. The court reasoned that this evidence, combined, presented a jury question under *res ipsa loquitur.* Subsequent cases have struck *res ipsa loquitur* counts where expert testimony of a rare and unusual result was not accompanied by further evidence of negligent acts that could have caused the injury at issue. (See, *e.g., Contreras v. St. Luke's Hospital* (1978), 78 Cal. App. 3d 919, 933, 144 Cal. Rptr. 647, 656.) When the trial judge in the instant case permitted the ordinary negligence counts to go to the jury, he ruled that a verdict

finding the defendant liable could stand. The evidence sufficient to hold defendant liable under negligence specifically does not eliminate the *res ipsa loquitur* doctrine; rather, the foundation for it and the inference of negligence permitted under it were strengthened (Prosser, Torts sec. 40, at 231-32 (4th ed. 1971)), at least to the extent of presenting a jury question.

The second indication of the soundness of our reasoning lies in the statements made by the trial judge in striking the *res ipsa loquitur* counts. He said:

> "Illinois, regardless of what any of us say, still gives expression to the, as far as *res ipsa* is concerned, to what we call the gross negligence or common negligence rule."

He cited *Comte v. O'Neil* (1970), 125 Ill. App. 2d 450, and *Estell v. Barringer* (1972), 3 Ill. App. 3d 455, as support for his position, and then noted that our decision in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, criticized these prior holdings:

> "They merely said basically, the evidence merely created an inference of negligence under *res ipsa,* and that is as far as they went. Even in referring to the intramuscular injection which was involved in the Edgar County case, I believe Mr. Sunderman correctly stated the law or the opinion of that court. They felt this was a common knowlege type of thing and again, you might say hung their head on that doctrine \*\*\*. Looking at the evidence most favorable to the plaintiff, obviously a fistula' did occur after the operation. There is no testimony in the record that it was caused at the time of the operation. Precipitating factors resulting from the operation could have caused or may not have caused it. I don't know.
> \*\*\*
> I don't think it is a *res ipsa* case under any stretch of the imagination, based on the law as it exists in Illinois now."

From these statements it is apparent that the trial judge relied on cases rendered inapplicable by the opinion in *Edgar County.* At the time of this trial, other attorneys,

like the defendant in *Walker,* similarly misinterpreted that opinion. We must remain consistent with *Walker* and *Edgar County* nevertheless. We conclude, therefore, that from all of the evidence, viewed in a light most favorable to plaintiffs, a jury could have determined that the foundation for the *res ipsa loquitur* doctrine was laid and, further, could have concluded that the defendant was negligent. Since this jury's conclusions on this issue will never be known, we must remand the case for a new trial on the *res ipsa loquitur* counts.

At the end of the trial, plaintiff tendered the following jury instruction, a modified version of IPI Civil No. 105.01 (2d ed. 1971) relevant to the causes of action based upon negligence:

> "In treating and operating upon a patient, a doctor must possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified doctors in the locality in which he practices or in similar localities in similar cases and circumstances. A failure to do so is a form of negligence that is called malpractice.
>
> The only way you may decide the standard of care that is required in the circumstances is by a doctor called as an expert witness. You must not attempt to determine this standard from any personal knowledge you may have."

The tendered instruction differs from IPI Civil No. 105.01 in that the second paragraph of No. 105.01 states that expert witnesses must also establish defendant's deviation from the standard of care. The trial court upheld defendant's objection to this instruction, neither plaintiff nor defendant tendered IPI Civil No. 105.01, and, consequently, no instruction concerning the standard of care or deviation from that standard was given.

Even adopting the view argued by the plaintiffs, their modified version of IPI Civil No. 105.01 was inadequate because it contained no instruction about the necessity of establishing a deviation from the standard of care. Accord-

ing to cases cited by the plaintiffs and others reviewed by us, establishing a deviation from the standard of care is the second essential element in a negligence cause of action. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249.) Because plaintiffs' proffered instruction omitted mention of this element, it was properly refused.

The judgment of the appellate court is affirmed as to its affirmance of the verdict on the negligence counts and reversed as to its affirmance of the dismissal of the *res ipsa loquitur* portions of the complaint. The judgment of the circuit court of Coles County is affirmed as to the negligence counts and reversed as to its dismissal of those portions of plaintiffs' complaint based on *res ipsa loquitur.* The cause is remanded to the circuit court for further proceedings consistent with this opinion.

> *Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*

MR. JUSTICE RYAN, concurring in part and dissenting in part:

Appropriate to my concern about the majority opinion is a statement by Dean Prosser commenting on the doctrine of *res ipsa loquitur:*

"It is a thing of fearful and wonderful complexity and ramifications, and the problems of its application and effect have filled the courts of all our states with a multitude of decisions, baffling and perplexing alike to students, attorneys and judges." Prosser, *Res Ipsa Loquitur in California,* 37 Cal. L. Rev. 183 (1949).

The majority opinion relies on *Clark v. Gibbons* (1967), 66 Cal. 2d 399, 426 P.2d 525, 58 Cal. Rptr. 125, in support of its holding that a rare occurrence, plus evidence of specific acts of negligence, are sufficient to sub-

mit the case to the jury under a *res ipsa loquitur* instruction. Before demonstrating that the facts of our case are not even sufficient to warrant giving a *res ipsa loquitur* instruction to the jury under the holding of *Clark v. Gibbons,* some general comments about the doctrine are in order.

Before the doctrine applies to a given case, a plaintiff must establish his exercise of due care, that the instrumentality which caused the injury was under the control of the defendant, and that the accident is such as ordinarily does not happen if due care is exercised. (Prosser, Torts sec. 39, at 214 (4th ed. 1971).) The last of these is the essential circumstantial evidence from which the inference of negligence is drawn. The majority, while acknowledging that whether the doctrine applies in the given case is a question of law to be determined by the court, nonetheless holds that the jury should determine whether the elements have been proved from which it may draw inferences of negligence. Although that may be true in a limited area, it is not the general rule.

Essential to the application of the doctrine is the fact that the occurrence is such as in the ordinary course of things would not have happened if due care had been exercised. This is another way of stating an obvious principle of circumstantial evidence. Generally, the basis from which the conclusion may be drawn that such events did not occur without negligence is the common knowledge of the community. Whether common knowledge exists is not a question of fact but a question of law. It is for the court to determine. "It is enough that the court cannot say that the jury could not reasonably [conclude that it is more likely than not that there was negligence associated with the cause of the event]. Where no such balance of probabilities in favor of negligence can reasonably be found, res ipsa loquitur does not apply." (Prosser, Torts sec. 39, at 218 (4th ed. 1971).) Once the court makes the determination that *res ipsa loquitur*

does apply, however, the jury may draw inferences from the occurrence that the event was caused by a negligent act.

There are circumstances that do not fall within the common knowledge of the community. In such cases it is permissible to establish through the use of experts that certain events do not ordinarily occur if due care is exercised. In *Walker v. Rumer* (1978), 72 Ill. 2d 495, this court held that this essential element in the medical malpractice case can be established by expert testimony and held that the determination must be made *as a matter of law* whether the occurrence is such as in the ordinary course of things would not have happened if the party had exercised due care.

The majority cites *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, as illustrating "the preferred approach" for determining the application of the *res ipsa loquitur* doctrine. In that case there was a dispute as to whether the defendant was in control of the premises from which the window fell. This court held that the question of whether or not defendant had control of the premises was a question of fact. The court also noted that there was no question that this was the type of accident which does not ordinarily occur in the absence of someone's negligence. The court, in that case, restated the accepted principle that "[w]hether the doctrine applies in a given case is a question of law which must be decided in the first instance by the trial court." (*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349.) Thus, *Drewick* lends no support to the holding of the majority opinion. In two recent medical malpractice cases the holding of *Drewick* was reaffirmed. *Walker v. Rumer* (1978), 72 Ill. 2d 495, 502; *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305.

In some States there has developed what is referred to as "conditional" *res ipsa loquitur*, which is applied in

cases where the existence of conditions upon which the doctrine depends are disputed, and the applicability of the doctrine thus becomes a question of fact. (2 J. Dooley, Modern Tort Law sec. 34.66 (1977).) The Law Revision Commission comment to section 646 of the Evidence Code of the State of California (Cal. Evid. Code sec. 646 (Deering 1979 Supp.) explains that the conditional *res ipsa loquitur* instruction under the Code should be given in cases where the basic facts upon which the doctrine rests are contested.

*Clark v. Gibbons,* relied on by the majority opinion, fits neither the traditional nor conditional *res ipsa loquitur* pattern. It relies on neither common knowledge nor expert testimony to establish the basic premise that the event is not such as ordinarily occurs in the absence of negligence. It does not rely on the happening of the occurrence alone. The premise from which the inference of negligence may be drawn under the *Clark v. Gibbons* rationale is that proof that when due care is used, an injury *rarely* occurs, accompanied by other evidence of negligence, may be sufficient to warrant an instruction on conditional *res ipsa loquitur. (Clark v. Gibbons* (1967), 66 Cal. 2d 399, 412, 426 P.2d 525, 534, 58 Cal. Rptr. 125, 134.) In that case, however, both Mr. Justice Tobriner and Mr. Chief Justice Traynor wrote concurring opinions which opposed the extension of the *res ipsa loquitur* doctrine. Mr. Justice Tobriner stated:

> "To give a res ipsa instruction under such circumstances invites a purely speculative leap and entrusts the jury with unreviewable power to impose or withhold liability as it sees fit." (*Clark v. Gibbons* (1967), 66 Cal. 2d 399, 415-16, 426 P.2d 525, 536-37, 58 Cal. Rptr. 125, 136-37.)

Mr. Justice Tobriner further observed:

> "[T]he rarity of an event may well bear no relationship to negligence. Courts which ignore that fact in formulating the law of res ipsa loquitur

unjustly penalize physicians and plunge the legal process into an abyss of uncertainty and obfuscation." (*Clark v. Gibbons* (1967), 66 Cal. 2d 399, 421, 426 P.2d 525, 540, 58 Cal. Rptr. 125, 140.) Mr. Chief Justice Traynor, in his concurring opinion, pointed out that the inference of negligence in a *res ipsa loquitur* case must be based on more than speculation. It is drawn from the happening of the accident, and there must be common knowledge or expert testimony that when such an accident occurs, it more probably than not is a result of negligence:

"A showing that such an accident rarely occurs does not justify an inference of negligence without a further showing that when the rare event happens, it is more likely than not caused by negligence." (*Clark v. Gibbons* (1967), 66 Cal. 2d 399, 422, 426 P.2d 525, 541, 58 Cal. Rptr. 125, 141.)

Mr. Chief Justice Traynor pointed out that evidence of specific acts of negligence has no relation to *res ipsa loquitur,* which requires the inferences to be drawn from the mere happening of the event. Indicative of the departure of the holding of *Clark v. Gibbons* from the accepted principles of *res ipsa loquitur* is Dean Prosser's comment:

"A badly confused case is Clark v. Gibbons, 1967, 66 Cal. 2d 399, 58 Cal. Rptr. 125, 426 P.2d 525 ***." (Prosser, Torts sec. 41, at 243 n.57 (4th ed. 1971).)

It is also worthy of note that the holding of *Clark v. Gibbons* has had very limited, if any, acceptance outside California, and, as shown by the California cases discussed below, even in that State it has been narrowly applied.

Even assuming the validity of *Clark v. Gibbons,* it is not authority for the giving of a conditional *res ipsa loquitur* instruction under the facts of our case. Several California cases subsequent to *Clark v. Gibbons* have limited and defined the application of the holding of that case. In *Clemens v. Regents of the University of California* (1970), 8 Cal. App. 3d 1, 87 Cal. Rptr. 108, the court

noted that the rule of *Clark v. Gibbons* was not stated in absolute terms, but held only that a rare occurrence, coupled with other evidence of negligence, *may* be sufficient to authorize the giving of a conditional *res ipsa loquitur* instruction. The *Clemens* court also pointed out that the rule is generally only applicable to injuries resulting from procedures which are not complex. *Clemens* held that although the evidence in that case showed that the injury was unexpected and unusual when due care was exercised, the evidence was not sufficient to warrant the giving of a *res ipsa loquitur* instruction without further testimony that the unexpected and unusual result was probably the consequence of negligence. The court also noted that the evidence in support of the plaintiff's contention that the medical procedure was negligently performed was *sketchy* and consisted only of a medical opinion that the procedure should not have been undertaken and discrepancies in the evidence concerning the timing of injections. It has been stated that the holding of *Clemens* is that the conditional *res ipsa loquitur* doctrine is not used when the evidence of negligence is *weak.* Comment, *Res Ipsa Loquitur: Its Place In Medical Malpractice Litigation,* 8 U.S.F. L. Rev. 343, 352 (1973).

*Fraser v. Sprague* (1969), 270 Cal. App. 2d 436, 76 Cal. Rptr. 37, and *Berkey v. Anderson* (1969), 1 Cal. App. 3d 790, 82 Cal. Rptr. 67, both held that, under the facts of those cases, the giving of a conditional *res ipsa loquitur* instruction was appropriate. However, both cases emphasized, as did *Clemens,* that the holding of *Clark v. Gibbons* may warrant the giving of the instruction, particularly if the injury resulted from a *commonplace* procedure rather than from a complex or unusual operation.

In *Contreras v. St. Luke's Hospital* (1978), 78 Cal. App. 3d 919, 144 Cal. Rptr. 647, the plaintiff had suffered an infection in his knee following surgery. It was established that infection following surgery rarely occurred.

The defendant doctor told the plaintiff that the infection was caused by one of three things. Either a glove or a tool was not sterilized properly, or a defective mask permitted one of the persons operating to breath on the area of the body where the surgery was being performed. The court held that the rule of *Clark v. Gibbons* did not apply because the evidence did not show any specific act or omission of a type which could have caused the injury suffered by the plaintiff. The court noted that there was no evidence to establish that the sterilizing procedures and other precautions did not conform to accepted practice.

Applying these constructions of *Clark v. Gibbons* to the facts of our case, it is clear that *res ipsa loquitur* did not apply. Our case involved complex surgery and was not a commonplace procedure. Also, in our case there is no evidence, by expert testimony, establishing that the event or injury rarely occurs if due care is exercised. The most that Dr. Wilson, plaintiff's expert witness, would say is that "this is a rare and unusual complication." There is no evidence that it is rare and unusual *if due care is used.* The attorney was well aware of what he had to prove. He did not get Dr. Wilson to give the answer that was necessary. The simple fact is that the plaintiff did not prove that which was required. We have no indication as to why the attorney did not pursue the matter further. It may well be that through the use of a discovery deposition he was aware that Dr. Wilson would not say that this occurrence would not ordinarily happen in the absence of negligence, or under the *Clark v. Gibbons* test that it is rare when due care is exercised. In any event, all that is in the record is that it is a rare and unusual complication. This is not enough, under *Clark v. Gibbons,* to authorize the giving of a conditional *res ipsa loquitur* instruction regardless of what other evidence there may be of specific acts of negligence.

As to the specific acts of negligence of the defendant,

the evidence of such acts is at the best weak or "sketchy." The evidence must be of a specific act of negligence of a type which could have caused the injury. (*Contreras v. St. Luke's Hospital* (1978), 78 Cal. App. 3d 919, 932, 44 Cal. Rptr. 647, 656.) The majority opinion relies on the defendant's statement that he "operated a little too soon." Actually, the exact statement, according to the testimony of the plaintiff's husband, was "he said he went in a little too soon." There is no evidence that by operating at the time he did the defendant did not conform to accepted medical standards. Dr. Wilson, plaintiff's expert witness who practiced in obstetrics and gynecology, was questioned by plaintiff's counsel concerning surgery for hysterectomy of a patient who has pelvic inflammatory disease. The witness stated there were acute stages and chronic stages of the disease. An acute stage would be manifested by an elevated white blood cell count to as much as 20,000 to 25,000, and possibly an elevated temperature. If possible, the witness stated, surgery is ordinarily not performed at that time. It is best to treat the patient with antibiotics until the condition is in the chronic or "smoldering" state. Surgery is preferable at that time. The witness stated that normally the white blood cell count is from 5,000 to 10,000. Plaintiff's attorney then asked the witness whether absent an emergency situation a hysterectomy should be performed during a stage when the infection is acute. The doctor responded:

> "That is a judgment decision. *** The judgment must be made, basically, by the surgeon at the time of the surgical procedure. It is not always possible to tell what's in an abdomen from the outside until one is actually looking inside the abdomen at the time the surgery is done."

On cross-examination, the witness stated that the laboratory at his hospital considers as a normal range of white blood cell count from 5,000 to 10,000, whereas, some laboratories use the outer limits of the normal range of from 5,000 to 11,000 or 12,000. He also stated that the

acute stage would be accompanied by a fever and acute pain.

Dr. Steward testified that at the time he performed surgery on plaintiff, she did not have an acute infection. He had been treating her conservatively with antibiotics for the infection since November 1971. The infection would flare up, that is, become acute, and then subside. She had been hospitalized in June 1972 with severe abdominal pain and treated with antibiotics. Her white blood cell count was about 25,000. On July 6, 1972, she was released from the hospital but continued to take antibiotics. On July 31, 1972, he saw the plaintiff. At that time her temperature was normal and he scheduled surgery for August 3, 1972. On August 2 her white blood cell count was taken and it was only 10,900. He stated that in this hospital laboratory the normal limits were considered to be 7,000 to 11,000. He also stated that the normal limits varied, depending upon the techniques that the laboratory uses. He considered her blood count, at that time, to be within normal limits, so he proceeded with the surgery as scheduled.

In light of all this evidence, the alleged statement by the defendant to the plaintiff's husband that he "went in a little too soon" is no evidence that the defendant did not conform to accepted medical procedures. Thus, the plaintiff has failed to prove any of the facets of the *Clark v. Gibbons* test that the occurrence rarely happens if due care is exercised, that the defendant committed a specific act of negligence of a type which could have caused the injury, and that the procedure was commonplace rather than a complex surgery. Under the holding of the California cases previously cited, conditional *res ipsa loquitur* did not apply. The essence of medical malpractice is a violation of the prevailing standard of care. (2 J. Dooley, Modern Tort Law sec. 34.12 (1977).) Even assuming the defendant "went in a little too soon," and that this was the cause of the fistula, this is not proof of a specific act

of negligence. Dr. Wilson, the plaintiff's expert, testified that it is a judgment decision which must be made by the surgeon and that it is not always possible to tell what is in an abdomen from the outside. The plaintiff's white blood cell count was within normal range and her temperature was normal. There was no indication that her infection was in an acute stage.

The majority opinion does not refer to another California case which is factually very similar to ours. In *Siverson v. Weber* (1962), 57 Cal. 2d 834, 372 P.2d 97, 22 Cal. Rptr. 337, plaintiff brought an action against the defendant doctor, alleging malpractice in the performance of a hysterectomy. Several days after the surgery, plaintiff developed a fistula with complications quite similar to the plaintiff's in our case. The plaintiff testified that the defendant had said to her, "I must have put a suture through the flap of the bladder there which caused the fistula." (57 Cal. 2d 834, 837, 372 P.2d 97, 98, 22 Cal. Rptr. 337, 338.) The California Supreme Court held that the doctrine of *res ipsa loquitur* did not apply. The court stated that no witness testified that in the rare cases where fistulas occur they are more probably than not the result of negligence. The court also held that the defendant's statement to the plaintiff that he must have put a suture through the flap of the bladder which caused the fistula cannot properly be regarded as showing probability of negligence. *Clark v. Gibbons* distinguished *Siverson* by noting that in *Siverson* there was no evidence of a negligent act of the type that could have caused the accident, and that none of the witnesses testified that anything was done during the operation which was contrary to good medical practice. These are facts which also distinguish our case from *Clark v. Gibbons. Siverson* would therefore appear to be the more appropriate precedent.

It has been noted that plaintiffs rarely lose *res ipsa loquitur* cases at the jury's hands. (James, *Proof of the Breach in Negligence Cases (Including Res Ipsa Loquitur)*,

37 Va. L. Rev. 179, 219 (1951).) Professor James states:

"In most of these cases the only serious obstacle to plaintiff's recovery is the possibility that he may not make out a res ipsa case in the first place." (James, *Proof of the Breach in Negligence Cases (Including Res Ipsa Loquitur)*, 37 Va. L. Rev. 179, 225.)

(See also Prosser, Torts sec. 40, at 231 (4th ed. 1971); Rubsamen, *Res Ipsa Loquitur in California Medical Malpractice Law—Expansion of a Doctrine to the Bursting Point*, 14 Stan. L. Rev. 251, 256 (1962).) Mr. Justice Tobriner, in his concurrence in *Clark v. Gibbons*, also noted that the holding in that case permitted the jury to speculate and would result in many doctors who had performed no negligent acts being found guilty of malpractice. If such is the possibility under the ordinary *res ipsa loquitur* doctrine, or under the expanded doctrine of *Clark v. Gibbons*, to what greater extent will this be true under the holding of the majority in this case? If, as stated by Professor James, the only serious obstacle to a plaintiff's recovery under *res ipsa loquitur* is getting the case to the jury, then the majority opinion in our case has virtually created a strict liability in malpractice cases under the guise of *res ipsa loquitur*. Now, given only a scintilla of evidence, the jury is permitted to speculate that the basis for drawing the inference of negligence exists.

To impose liability for fault, when in a vast number of cases where liability is imposed there is no fault, seems to me to be intellectually dishonest. It is demeaning to the law, to the legal profession, and to the judicial process because it will appear to the public in general, and to the members of the health care professions in particular, that the legal profession and the courts are playing games with what has come to be a meaningless Latin phrase for the purpose of permitting an injured party to recover on the basis of fault when there is in fact no fault involved.

There is no just reason to stigmatize a doctor and damage his professional reputation when he may have

conformed to all accepted professional standards. Mr. Justice Tobriner, in his concurrence in *Clark v. Gibbons,* observed: "[N]o technique yet devised can protect a doctor from the devestating impact which an adjudication of malpractice can have upon his professional standing." (*Clark v. Gibbons* (1967), 66 Cal. 2d 399, 418, 426 P.2d 525, 538, 58 Cal. Rptr. 125, 138.) In *Siverson v. Weber* the court found that to permit inferences of negligence under the doctrine of *res ipsa loquitur* solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used. Any system which diverts the doctor's attention from the operating room to the courtroom leaves much to be desired. *Clark v. Gibbons* (1967), 66 Cal. 2d 399, 418, 426 P.2d 525, 538, 58 Cal. Rptr. 125, 138 (Tobriner, J., concurring).

If public policy requires that financial responsibility be placed upon the doctor for rare complications on the assumption that in that manner the risk of loss can be better spread to the public at large, I suggest that we be truthful with ourselves and with the public and not continue to attempt to do so through the largely fictitious search for fault. I have heretofore expressed my dissatisfaction with the attempt to expand the concept of fault in another area of tort law to cover those injured in a manner outside the traditional fault concept. (See *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 381 (Ryan, J., dissenting).) Here again, I urge that if it is the public policy of this State that injured persons should recover for complications regardless of the fault of the doctor, then a no-fault procedure should be established to cover the unfortunate individuals who cannot recover within the traditional fault doctrine. I suggest that the fault concept be preserved for those who are truely injured through the doctor's malpractice. This will protect the doctor from

being unjustly stigmatized; it will relieve him of the heavy burden of balancing medical against legal consequences, and it should enhance the prestige of the legal profession and the courts by demonstrating to the public that the judicial process is in reality and not in name only "seeking after the truth." I seriously invite the legislature of this State to give consideration to this suggestion.

I concur in the majority's affirmance as to the negligence counts.

MR. JUSTICE UNDERWOOD joins in this partial concurrence and partial dissent.