(No. 6367— )

DENNIS O'DONNELL, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Order filed May 27, 1980\**

CORBOY AND KOTIN, for Claimant.

FRENCH AND ROGERS, for Respondent.

HOLDERMAN, J.

Claimant filed his claim against the State of Illinois alleging that the negligence of the employees of Illinois Research Hospital in the treatment of Claimant for a malignant brain tumor was responsible for cataracts on his eyes.

Claimant was born on November 29, 1949. He graduated from high school in 1968 and went to Harper Junior College for one year.

Prior to July of 1969, his condition of health was excellent. While he was in college, he noticed he had double vision and in July of 1969 Claimant entered the University of Illinois Research Hospital for treatment of what was eventually diagnosed as a brain tumor.

---

\* "On January 16, 1981, the Court denied the petition for rehearing and on March 30, 1981, the Court denied the motion for a new trial and dismissed the cause."

While hospitalized, the neurosurgery department of Respondent hospital referred Claimant to the x-ray department of Respondent hospital to treat him for a mass or brain tumor in the third ventricle, which is located in the middle of the head. Claimant was given forty-seven x-ray and cobalt treatments over a ninety-two day period. The treatments were evenly split between four fields or portals of entry: the forehead, the back of the head and each side of the head.

When Claimant received radiation from the frontal position, he received it two inches above the eyebrow. The field was not to include the two eyes. Claimant, at no other time in his life, received radiation treatments. He received six treatments on the cobalt machine and forty-one treatments on the x-ray machine. Claimant received 300,000 volt x-rays.

During the period of his treatment, no protective shields or other devices were ever put over his eyes nor was his head ever held immobile when he received the radiation or cobalt treatments.

After these treatments and the tumor had been destroyed, Claimant went to see an opthalmologist relative to his eyes. The ophthalmologist, Dr. James McCarthy, informed Claimant that he had cataracts. He described them as "typical irradiation cataracts" which means that they were formed as a result of ionizing radiation.

It was Dr. McCarthy's opinion that the cataracts were formed as a result of the treatments which destroyed the tumor. Dr. McCarthy, as stated, is an opthalmologist, and is not a specialist in radiology.

Edwin Liebner M. D. was one of the two witnesses who testified for Respondent. His title is head of the

therapeutic radiation division of the Department of Radiology at Respondent's hospital. He has been employed for the University of Illinois for the past twenty-five years and is board certified in radiology.

According to Dr. Liebner's testimony, Claimant's eyes were not anywhere in the direct field of radiation when the treatments were being given. He personally gave Claimant some of the treatments but he did not give him the entire treatment. His opinion, in direct contrast to the opinion of Claimant's opthalmologist, was that the cataracts were caused by the cortisone therapy and not by the radiological treatments.

Dr. Liebner testified that under certain conditions they did use shields to protect the eyes but they did not do so in the present case because they would have performed no useful function.

Dr. Oscar Sugar was the other witness who testified for Respondent. He testified that he had seen approximately six hundred patients who were treated by radiation and had never witnessed a case of cataracts which were asserted to be related to the radiation therapy given. Dr. Sugar, chief of the Neurosurgery Department of the University of Illinois hospital and board certified since 1950, testified that the tumor of Claimant was attached to the pineal body and located in the very center of the brain. Dr. Sugar further testified that the causes of the cataracts could have been the radiation therapy, muscular dystrophy which had been diagnosed in the Claimant at the age of four, or steriod therapy which was part of the treatment of the brain tumor. He stated he did not know which caused the cataracts.

In Dr. Liebner's testimony, he stated he was familiar with eye shields and these shields, when used, are slid under the eyelids to cover the cornea and the lens. He

further testified that the use of eye shields was not indicated in the treatments received by Claimant in 1969. He testified that the only time eye shields are used, and only one eye shield is used at a time, is when the tumor is near the eye or growing close to the eye which would place the eye in direct line of radiation. He stated that in Claimant's case, the eyes were not in the direct field of radiation. He further stated that if eye shields had been used, the Claimant would undoubtedly have developed a corneal ulcer.

The testimony of the two doctors employed by the University of Illinois was in direct conflict with that of Claimant's opthalmologist. Both of Respondent's doctors were board certified in radiology.

Claimant alleges that the doctrine of *res ipsa loquitur* is applicable in this case and under that doctrine, Respondent is responsible for damages alleged to have been caused by the radiation treatments. The doctrine of *res ipsa loquitur* is applicable in a medical malpractice case only upon a showing that (1) the instrument involved was under the exclusive control of the party charged with the negligence; (2) the occurrence was such that in the ordinary course of things it would not have happened if the person so charged had used proper care; and (3) the injury was not a result of the negligence of the injured party. See *Spidle v. Steward* (1979), 68 Ill. App. 3d 134. This case lays down the rule that *res ipsa loquitur* will not be invoked against a surgeon merely because he performed an operation upon a non-negligent patient and got an unusual result. Claimant cites *Johnson v. Marshal*, 241 Ill. App. 80, as being right on the point of *res ipsa loquitur*. In that case, Claimant introduced expert medical testimony that the injuries suffered by him would not have occurred unless the defendant had deviated from the applicable standard of care.

In the instant case, there is no evidence, expert or otherwise, that the cataracts which formed in Claimant's eyes would not have occurred unless Respondent had deviated from the standard of care.

In 49 Ill. App. 3d 539, the rule was laid down that in medical malpractice action, plaintiff must establish by expert testimony standard of care imposed upon defendant and then show by affirmative evidence unskilled or negligent failure to comply with such professional criterion which resulted to injury to plaintiff.

In the present record, there is not any medical testimony by a board certified radiologist that the acts of Respondent caused the injury complained of.

It is the opinion of this Court that Claimant, having failed to meet the burden of proof required, is not entitled to an award.

Claim denied.