(No. 87-CC-2473–

DENTON ARTERBURN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 29, 1990.*

LEMA, MOORE & CARROLL, for Claimant.

NEIL F. HARTIGAN, Attorney General (GREGORY THOMAS CONDON, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

This case arises out of a claim by Denton Arterburn, Claimant, who brings an action for personal injury

arising out of an incident on February 23, 1986, while incarcerated in the Jacksonville facility of the Illinois Department of Corrections. Claimant filed a two count Complaint in tort alleging negligence on the part of the Respondent, State of Illinois. Count II was dismissed prior to trial.

The complaint alleges that while Claimant was incarcerated at the Jacksonville State Correctional Facility he slipped on the asphalt shoulder of a concrete road in the facility, which was covered with ice and snow, injuring his right shoulder. The basis of his complaint is that he was denied prompt and adequate medical care which the State had a duty to provide. Claimant seeks damages of One Hundred Thousand Dollars ($100,000.00) and punitive damages of One Hundred Thousand Dollars ($100,000.00) in the Court of Claims. Respondent asserts a set-off of forty-four thousand five hundred eighty-five dollars and three cents ($44,585.03), for the State's support of Claimant's children.

At the time of the Hearing, Claimant was fifty (50) years old. Claimant is mildly retarded with an IQ of 62. Claimant testified that he fell on snow and ice while walking back from the commissary to his barracks on February 23, 1986. After the fall, Claimant was taken to the prison infirmary and subsequently referred to Passavant Hospital in Jacksonville, Illinois. At Passavant Hospital, Claimant was seen by Dr. Harvey D. Scott. Dr. Scott diagnosed Claimant's injury as a third-degree separation of the acromioclavicular joint.

Claimant testified he was told that he would have surgery on the Tuesday following the injury, but the Doctor decided not to do the surgery. Claimant testified that he never told anyone he did not want surgery but

that the Doctor decided not to do surgery because it might leave a scar.

Dr. Scott's report indicated that Claimant could be treated with open reduction or conservative care. Conservative care would leave Claimant with a prominent distal clavicle. Open reduction would leave the Claimant with a scar. Dr. Scott's report indicated Claimant did not want to have surgery.

At the hearing, Claimant could move his left arm forward, around, up and down, bend it and straighten it out in every direction. He could not do so with his right arm. Claimant testified to continuous pain since the fall.

Dr. Scott's records indicate Claimant was examined by him on February 25, 1986. Claimant had been seen at the prison by Dr. Peterson and appropriately treated by a sling and medication. The Doctor's records indicate that after explaining to the Claimant the conservative and surgical approaches, Claimant decided against surgery. Dr. Scott advised Claimant that if Claimant changed his mind and wanted surgery, to notify Dr. Scott so arrangements could be made. The report was dictated by the Doctor in the presence of the Claimant.

Claimant returned to see Dr. Scott on March 25, 1986. Claimant did have tenderness and stiffness in the joint but was doing reasonably well. Claimant was started on physical therapy. Claimant was again seen by Dr. Scott on April 29, 1986. At that time, the Claimant had lost some range of motion. The Doctor advised Claimant to be more aggressive in his therapy. Dr. Scott felt the range of motion could be worked on without surgery but indicated he would take an x-ray if Claimant was still experiencing pain the next month.

On May 29, 1986, Dr. Scott again saw Claimant and the Doctor indicated that the Claimant had no com-

plaints. The stretching exercises were mobilizing the shoulder and the Doctor felt with a continued exercise, nothing further needed to be done. The Doctor advised the Claimant that if he refused organized therapy, he would simply have to live with the restricted motion.

On June 3, 1986, x-rays were taken of Claimant. The x-rays appeared negative for fracture. The medical progress notes for the May 3, 1986, examination indicate Claimant stated he had no pain and no difficulty with the exercises. The medical records also indicate that Claimant only appeared for physical therapy three times.

The Departmental Report introduced into evidence indicates that the medical director of the Jacksonville Correctional Center reviewed Claimant's medical file and found that Claimant received timely and appropriate care by the physicians involved.

Claimant introduced an evidence deposition of Dr. James K. McKechnie, an orthopedic surgeon from Charleston, Illinois. He reviewed Claimant's medical records and examined Claimant. His diagnosis was residual acromioclavicular dislocation, third degree involving his right AC joint. Dr. McKechnie also believed that Claimant had developed an adhesive capsulities in his shoulder and that was what was causing his limited mobility of the shoulder. The adhesive capsulities was a secondary result of the immobilization for treating the injury and then a voluntary or involuntary splinting of the shoulder by the patient and failure to regain a natural range of motion.

Dr. McKechnie recommended that Claimant initiate a course of vigorous physical therapy in an effort to relieve the adhesive capsulities condition. Dr.

McKechnie testified that he usually treated third degree AC separations surgically. He did, however, admit that there are authorities who recommend a conservative treatment. He further stated there can be functional problems whether the conservative or surgical treatments are used.

Dr. McKechnie could only testify that "the pain and deformity that come from the AC joint itself *might* (emphasis added) have been prevented by a surgical correction of the deformity at the time of the injury. The adhesive capsulities is, of course, another problem that Claimant has and not related to having or not having surgery." Dr. McKechnie further testified that the decrease in range of motion could be attributed to Claimant's lack of cooperation with the prescribed physical therapy. Dr. McKechnie further testified that he did not believe there had been an insufficient examination on Mr. Arterburn by Dr. Scott nor that there had been an insufficient diagnostic procedure performed by Dr. Scott. Dr. McKechnie felt there had been a careful diagnosis and that there was no act or omission contrary to generally accepted medical practice by Dr. Scott.

For the Claimant to recover against the State, he must prove by a preponderance of the evidence that negligent acts of the State proximately caused the Claimant's injuries. The State has a duty to provide reasonable medical care for prison inmates and negligent treatment of a prison inmate by a prison doctor may lead to liability on the part of the State. See *McDougle v. State* (1978), 32 Ill. Ct. Cl. 463.

The Claimant has the burden to present medical evidence of standard of care under the circumstances and that the State deviated from the standard of care. (See *O'Donnell v. State* (1980), 34 Ill. Ct. Cl. 12.) The

Claimant has failed in its burden to prove a standard of care and a deviation by the Doctor. There has been nothing in the record other than Claimant's testimony to indicate that inadequate medical care was afforded Claimant. There was no expert testimony to indicate what the standard of care was, and that the State provided inappropriate treatment. The Claimant's own expert, Dr. McKechnie, testified that the treatment afforded Claimant by the State was appropriate. Dr. McKechnie testified that Dr. Scott gave Claimant a sufficient examination, a sufficient diagnostic procedure had been performed, that Dr. Scott made a careful diagnosis, and that Dr. Scott committed no act or omission as to the treatment of Claimant contrary to generally accepted medical practices. Dr. McKechnie further testified that either surgical or conservative treatment, as was given in this case, were accepted approaches to the treatment of a third AC separation.

The Departmental Report indicates Dr. Scott informed Claimant of the two approaches, that Claimant chose not to have the surgery, and that he could have at any time advised the doctor that he changed his mind and wanted surgery. It is apparent from the record that there was no malpractice committed upon Claimant, that he was informed of the approaches to treatment and that Claimant has failed in his burden to prove contrary.

The issue of set-off does not need to be decided because it is the opinion of this Court that Claimant is not entitled to damages. The Claimant has failed in his burden of proof and for that reason we deny this claim.